Receipt #7CW5924

ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NEZ PERCE TRIBE,<br>Plaintiff,<br>vs.<br><br>DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior; JAMES E. CASON in his official capacity as Acting Assistant Secretary of the Interior for Indian Affairs; and HENRY M. PAULSON, in his official capacity as Secretary of the Treasury,<br>Defendants. | **Case No.** 06-910 L<br><br>**COMPLAINT** |

FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

COMES NOW the Nez Perce Tribe, by and through its attorney of record, and complains and alleges as follows:

**Parties**

1. Plaintiff Nez Perce Tribe (the "Tribe") is a sovereign entity with legal rights and responsibilities, eligible for the special programs and services provided by the United States because its status as a federally-recognized Indian tribe, and to which the United States has responsibilities as the Tribe's trustee.

2. Defendant Dirk Kempthorne is the Secretary of the Interior and chief officer of the Department of the Interior and, as such, is charged by law with carrying out the trust responsibility of the United States as trustee for the Tribe.

3. Defendant James E. Cason is the Assistant Secretary of the Interior for Indian Affairs and chief officer of the Bureau of Indian Affairs ("BIA") within the Department of the Interior and, as such, is the delegate and agent of Defendant Kempthorne in carrying out the trust responsibility of the United States as trustee for the Tribe.



ORIGINAL

4. Defendant Henry M. Paulson is the Secretary of the Treasury and chief officer of the Department of the Treasury and, as such, is charged by law with carrying out the trust responsibility of the United States as trustee for the Tribe including, *inter alia*, the responsibility to administer the tribal trust funds of which Defendant Paulson is the custodian and for which he has the responsibility to prepare and maintain records.

**Jurisdiction**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1505 in that this is a claim for money damages against the United States of America ("United States") by the Nez Perce Tribe ("Tribe"), a federally recognized Indian Tribe, for breach of the United States' duties, as trustee for the Tribe, pursuant to the Nez Perce Treaty of June 11, 1855, 12 Stat. 957 and the Nez Perce Treaty of June 9, 1863, 14 Stat. 647.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1491 in that this is a case founded upon various Acts of Congress including, *inter alia*: Nez Perce Treaty of June 11, 1855, 12 Stat. 957; the Nez Perce Treaty of June 9, 1863, 14 Stat. 647; Act of March 3, 1883, c. 141, §1, 22 Stat. 590; Act of February 12, 1929, c. 178, 45 Stat. 1164, *codified as amended*, 25 U.S.C §161b; Act of June 24, 1938, 52 Stat. 1037, *codified as amended*, 25 U.S.C. §162a; American Indian Trust Fund Management Reform Act, 25 U.S.C. §4001, *et seq*.

**Factual Allegations**

7. The affairs of the Tribe are administered by the Nez Perce Tribal Executive Committee ("NPTEC") in accordance with a constitution and by-laws established by the Tribal General Council, which is composed of qualified tribal voters.

8. The Tribe historically owned and occupied approximately 13 million acres of land in an area that is now north central Idaho, northeast Oregon, and southeast Washington. Since time immemorial, the Tribe utilized that area for subsistence and commercial purposes.

9. The Tribe entered into several treaties and agreements with the United States, including Nez Perce Treaty of June 11, 1855, 12 Stat. 957 and the Nez Perce Treaty of June 9, 1863, 14 Stat. 647.

10. Pursuant to these treaties, the Tribe ceded certain land to the United States and reserved for itself a homeland, encompassing approximately 750,000 acres, now known as the Nez Perce Reservation which is located within the State of Idaho.

11. The Tribe is the beneficial owner of land and natural resources within the Nez Perce Reservation including land and natural resources that are valuable for timber, minerals, grazing, and agricultural purposes, title to which is held in trust by the United States for the benefit of the Tribe.

12. Congress authorized the Secretary of the Interior to collect income from tribal trust land and resources and to deposit such income into the United States Treasury and/or other depositories for the benefit of the Tribe. *E.g.*, Act of March 3, 1883, c. 141, §1, 22 Stat. 590.

13. Congress also directed that interest be paid on tribal trust funds and required that such trust funds be invested. *E.g.* Act of February 12, 1929, c. 178, 45 Stat. 1164, *codified as amended*, 25 U.S.C §161b; Act of June 24, 1938, 52 Stat. 1037, *codified as amended*, 25 U.S.C. §162a.

14. The United States has, and does, control and manage the Tribe's trust property which includes, but is not necessarily limited to land, natural resources, income from land and natural resources, and income from trust funds of the Tribe.

15. The United States has, and does, approve leases, approve easements, and grant other interests in the Tribe's trust property.

16. The United States is, and has been, responsible for the collection, deposit, and investment of the income generated from the Tribe's trust property.

17. Because the United States holds the Tribe's property in trust, the United States is charged with the obligations, responsibilities, and duties of a trustee. *United States v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary relationship with the Tribe and "'has charged itself with moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" *Cobell*, 240 F.3d at 1099, *quoting Seminole Nation v. United States*, 316 U.S. 286, 297 (1942).

18. The United States' trust obligations to the Tribe include, *inter alia*, the duties to: ensure that the Tribe's trust property is protected, preserved and managed so as to produce the maximum return to the Tribe consistent with the trust character of the property; maintain adequate records with respect to the Tribe's trust property; maintain adequate systems and controls to guard against error or dishonesty; provide regular and accurate accountings to the Tribe as beneficiary of the trust; and refrain from self-dealing or benefitting from the management of the Tribe's trust property.

19. The United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, *inter alia*, have found that there are massive and long-standing problems with the United States' management and administration of Indian trust funds. After a series of oversight hearings on the management of Indian trust funds by the Department of the Interior, Congress issued a report condemning those management practices. *See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund*, H.R. Rept. No. 102-499, 102d Cong. 2d Sess. (1992). Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in the BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities and to prudently manage the trust funds. *Id.* at 2.

> The Bureau has repeatedly ignored directives to undertake needed management reform measures. *Id.* at 3
>
> As a result of this dismal history of inaction and incompetence, there is no assurance that the Bureau actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of initiatives, the Bureau's headquarters leadership and accountability continue to be woefully inadequate.
>
> It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of native American tribes and a source of income to tens of thousands of native Americans. *Id.* at 5.

20. Congress also found that the United States breached its fiduciary duties to the beneficiaries of the Indian trust fund:

> The [Bureau of Indian Affairs'] management of the Indian trust fund has been grossly inadequate in numerous important respects. The Bureau has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the Bureau of Indian Affairs, the Indian trust fund is equivalent to a bank that doesn't know how much money it has. *Id.* at 56.

21. Congress further found that the United States lost and/or destroyed relevant trust account records, failed or refused to disclose known losses to trust beneficiaries, and failed or refused to reimburse trust beneficiaries for losses to their trust funds. *Id.* at 37-41.

22. Congress required the United States to: audit and reconcile tribal trust funds; provide tribes with an accounting of such funds; and certify, through an independent party, that the results of the reconciliation of tribal trust funds are the most complete reconciliation possible. Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329. *See also* Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; and Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990.

23. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, 25 U.S.C. §4001, *et seq.*, recognizing the United States' pre-existing trust responsibilities and charging the Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities of the United States. These responsibilities include: the duty to provide periodic, timely accountings of trust funds to tribal and individual Indian beneficiaries; and the duty to cause an annual audit of all trust funds to be conducted. 25 U.S.C. §4011; 25 U.S.C. §162a(d).

24. In approximately the early 1990's, the Department of the Interior entered into a contract with the accounting firm Arthur Andersen LLP ("Arthur Andersen"), pursuant to which Arthur Andersen was to provide a report on certain tribal trust fund accounts.

25. Arthur Andersen subsequently prepared a report titled "Agreed-upon Procedures and Findings Report for Nez Perce Tribe of Idaho, July 1, 1972 Through September 30, 1992, Summary of Account Balances and Adjustments as of September 30, 1992" (the "Nez Perce Report"), which was received by the Tribe on or about February 21, 1996. At some time thereafter, the Tribe also received additional materials including a series of "Account Statements" and compact disks (CD ROMS) which Defendants advised were part of the Nez Perce Report.

26. The agreed-upon procedures merely required Arthur Andersen to verify that, in those instances where some data were available on tribal trust accounts, those data were correctly recorded. The agreed-upon procedures did not require Arthur Andersen to do an accounting of the Tribe's trust accounts or to reconcile the Tribe's trust accounts.

27. The United States has breached, and is breaching, its trust responsibilities to the Tribe by its continuing failure to implement the basic trust fund administration and management procedures required by law. *See Cobell v. Babbitt*, 91 F. Supp. 2d 1 (D.D.C. 1999), *aff'd sub*

*nom. Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001); *Memorial of the Nez Perce Indians Residing in the State of Idaho to the Congress of the United States*, 62d Congress, 1st Session, Sen. Doc. No. 97 (presented by Senator Borah, August 14, 1911).

28. Upon information and belief, the United States' failure to implement these legally required trust fund administration and management procedures has resulted in financial losses to the Tribe. The extent of such losses is unknown to the Tribe because the United States has failed to maintain accurate books and accounting records and has failed to provide the Tribe with an accurate accounting of its trust property.

**Claim for Relief**

29. The Tribe realleges and incorporates herein the allegations contained in paragraphs 1 through 25 above.

30. As a result of the United States' continuing breach of its trust responsibilities to the Tribe, the Tribe has suffered financial losses including, but not necessarily limited to, losses of income from the Tribe's land, natural resources, and trust funds.

WHEREFORE, plaintiff prays for damages in an amount to be proved at trial, all costs and expenses of this action, reasonable attorney fees, and such other relief as the court may find just or necessary.

RESPECTFULLY SUBMITTED this 26th day of December, 2006.

K. Heidi Gudgell

K. Heidi Gudgell, Attorney for Plaintiff
Nez Perce Tribe
Office of Legal Counsel
P.O. Box 305
Lapwai, Idaho 83540
Telephone: (208) 843-7355
Facsimile: (208) 843-7377