# **Exhibit 2**

**INTERTRIBAL MONITORING ASSOCIATION on Indian Trust Funds**
**Phone: 505/247-1447 Fax: 505/247-1449 Email: itma@itmatrustfunds.org**

# ITMA TRIBAL TRUST FUND SETTLEMENT PROJECT
# Informational Meeting

▪

Denver, Colorado
May 31, 2007

On May 31, 2007, the InterTribal Monitoring Association on Indian Trust Funds (ITMA) hosted an informational meeting for Tribal leaders and Tribal attorneys on the joint ITMA-Department of Interior (DOI) Office of Historical Trust Accounting (OHTA) Tribal Trust Fund Settlement (TTFS) Project in Denver, Colorado. The purpose of the meeting was to provide information to interested Tribes on the process developed by the Joint ITMA/DOI-TTFS Project to reach settlement of Tribal Trust accounting claims as an alternative to extended and costly litigation.

This Summary Meeting Report is written by and reflects the views of ITMA and not those of the Government.

## ITMA/DOI COOPERATIVE AGREEMENT FOR TTFS PROJECT

Mary Zuni, Executive Director of ITMA, reported that ITMA had entered into a Cooperative Agreement with DOI-OHTA in November 2004 to develop a process/methodology to address and settle Tribal accounting claims. The project was initially to include five tribes but seven tribes responded and all have voluntarily participated in the development of a settlement methodology that is close to completion but not yet finalized. DOI has provided funding for the project including travel costs for participating tribes and consultants. All participating tribes have consented to participation by Tribal Council resolution and ITMA has adopted a process to insure that tribal approval is obtained for each component of the process. Phase I of the TTFS project is to develop and finalize a methodology to examine Tribal accounting claims from 1972 to 1992. Phase II of the project will be the actual application of the methodologies to participating Tribes' trust fund accounts. [The September 2004 Executive Summary described this as:

"The Project's goal is to *achieve a fair and workable process for determining agreed-upon balances in tribal trust accounts which Tribes and the DOI could use to reach timely settlements of, and payments to, tribal trust accounts*. While the Project could later be expanded to other time periods and to mismanagement of trust assets other than money, the current grant will focus largely on trust funds only and for the period 1972-1992."

I believe we should keep the language consistent. The methodology is for the purpose of determining agreed upon balances in tribal trust accounts which Tribes and DOI could use to reach timely settlements of, and payments to, tribal trust accounts. Use of the words "examine Tribal accounting claims" puts this in a different light from what was originally envisioned. There may be claims – there may not be claims – this is a way to agree upon balances that will then help one determine whether that is the case.]

## CONFIDENTIALITY AGREEMENT ISSUES

Shenan Atcitty, ITMA Legal Counsel, discussed concerns recently expressed by the Native American Rights Fund (NARF) attorneys about the lack of a confidentiality agreement between DOI and ITMA to protect the seven tribes participating in the TTFS project. Initially, a concern existed that, unlike litigating tribes, the TTFS participating tribes had no Rule 408 of the Federal Rules of Evidence type of protection for participating in settlement discussions. However, this concern appeared abated by the commencement of litigation, which would automatically trigger Rule 408 protections. However, NARF continued to express concern that a confidentiality agreement to expand on Rule 408 protections should be developed to fully protect the TTFS participating tribes.

ITMA has been awaiting finalization of a confidentiality agreement between the Colville Tribe (a TTFS participating tribe) and the Department of Justice that may be used by other TTFS participating tribes. Brian Gunn, Legal Counsel for the Colville Tribe stated that the Tribe and DOJ have been in negotiations on the confidentiality agreement for 12 months but as of this date, the agreement is not final. Mr. Gunn stated he was not willing to disclose details of the agreement until finalization.

ITMA's current position on the matter is that an overall agreement is not necessary at this time as the project is still under development and participating tribes have not accepted a finalized methodology. Further, ITMA will encourage individual tribes to enter into confidentiality agreements with DOJ rather than promote ITMA as a party to an overall agreement. ITMA is hopeful the Colville Tribe will soon finalize an agreement that may be duplicated for the other participating tribes.

## DEPARTMENT OF INTERIOR PRESENTATION – Larry Jensen

**Larry Jensen**, Deputy Solicitor, Department of Interior discussed the Interior Department's objectives with the TTFS Project. He stated that DOI had approached ITMA in a spirit of cooperation to develop a methodology to address tribal trust accounting concerns. Mr. Jensen stated that the *Cobell v. Kempthorne* litigation has led to no resolution of trust accounting concerns for individual Indians. However, tribal claims are distinguishable from the *Cobell* plaintiff claims due to the existence of data from the Arthur Anderson reconciliation project that reviewed tribal accounts for the period of 1972 to 1992. While the data may not be perfect or complete, Mr. Jensen stated it should be a starting point to address tribal accounting concerns.

DOI has provided funding to for ITMA to retain accounting consultants to assist in the development of a methodology that basically starts with the Arthur Anderson (AA) data,

provides the tribes an opportunity to identify concerns with the AA data, then provides funds for the identified concerns to be addressed. This process would be an alternative to utilizing litigation to force DOI to do more accounting, then allow the tribe to review and challenge the accounting in court. With the ITMA project, the tribes and DOI would accept the results of an applied methodology for settlement including a financial settlement.

Mr. Jensen stated that Phase I of the TTFS Project only covers the 20 year period of the Arthur Anderson reports but if agreement is reached on error rates, then it may be possible to apply to error rates back in time. It may be possible to draw some general conclusion regarding issues prior to 1972. Additionally, while no discussion with ITMA has occurred, DOI would like to develop a methodology that would address all tribal claims, including the resource management issues that appear to be of greater concern to Tribes.

Questions from the Audience included:

- Does the concept for proceeding with the ITMA project include a stay of the Tribes' pending court actions? **Response**: If the plan for is for tribes and DOI to work cooperatively, then also proceeding with litigation makes no sense. DOI has limited resources to litigate all the pending cases and if a tribe approaches DOI and wants to apply the accepted methodology, DOI would expect the litigation to be stayed.

- How much confidence does DOI have in the AA Reports? **Response**: DOI has confidence in the core concept of the AA Project to take account information and compare it to underlying documents. DOI acknowledges that tribes have concerns about the AA work. However, DOI believes that the AA work is a useful starting point and DOI hopes to find methods to build confidence in the AA reports.

- Does DOI have any other legislative efforts pending to address tribal trust fund claims. **Response**: When Senator McCain was chairman of the Senate Committee on Indian Affairs, he expressed a serious desire to resolve the *Cobell* lawsuit. DOI proposed that a settlement involving significant funds should include both Cobell plaintiffs and Tribes. Due to the short window of opportunity, DOI concedes that no tribal consultation on DOI's position for settlement occurred. However, DOI has no legislative effort to address the *Cobell* litigation or tribal claims at this time. If Tribes desire a legislative approach, then DOI is willing to discuss and collaborate on legislation.

## OFFICE OF HISTORICAL TRUST ACCOUNTING PRESENTATION

**John McClanahan,**

John McClanahan explained that the Office of Historical Trust Accounting was established in 2001 to focus on accounting issues and includes staff with experience in field realty matters and oil and gas leasing and accounting. He stated the value in the OHTA approach is to identify and address issues raised by a tribe in settlement discussions rather than perform an accounting that may not address the tribe's concerns. He believes this approach is a good alternative to litigation and the project started prior to tribal litigation. Working jointly on issues may control the destinies of tribal claims better than the 29 judges currently involved.

OHTA's is responsible for providing information to tribes and presently 155,000 boxes of historical tribal records are stored at Lenexa. All seven tribes participating in the TTFS Project have received the AA Reports including account statements of activity, images of supporting documents including collection tickets and the "Agreed Upon Procedures" report that described the various procedures utilized in the project.

OHTA has provided approximately $1,000,000 in funding to the ITMA/DOI TTFS Project and plays a key role in funding accountants and statisticians to do research and data collection for the project. However, ITMA, independent from OHTA/DOI, selected the TTFS Phase I accounting consultants. DOI did not participate in that process. A key accomplishment in the project has been to assemble a group of tribes with varied income bases.

The next steps in the TTFS project include:

- Obtaining feedback from tribes to determine support and interest in the project;
- Identifying and confirming tribes that will participate in the finalization of the methodology;
- Development of a schedule to complete the methodology and modify the cooperative agreement accordingly;
- Application of the methodology as pilot runs;
- Completion of methodology and discussion with tribes who desire application of methodology to their accounts.

Questions from the audience:

- Are the currently proposed CFR Regulations to address tribal accounting claims continuing on a separate track from the TTFS Project? **Response**: DOI attempted to address the compelling task of producing an accounting and felt tribes should have an administrative appeal process to address the accounting issues. DOI believed a less formal administrative process should exist to address concerns. Additionally, DOI had to reckon with the fact that lawsuits were requesting an accounting.

- Will the proposed regulations address historical accountings? **Response**: The proposed regulations provide an administrative appeal process for tribes

to dispute account statements and were not aimed at addressing historical accounting issues.

- Will the proposed regulations effort be placed on hold if the ITMA project continues? **Response**: Larry Jensen responded affirmatively that the regulatory effort could be placed on hold if the tribes were interested in the ITMA project and it continued.

**PRESENTATION BY SANDRA JOHNIGAN AND DAVE RILEY**

TTFS Project consultants, Sandra Johnigan and Dave Riley, described the proposed TTFS Project methodology via a power point presentation (available on the ITMA website). Ms. Johnigan discussed each phase of the project plan, as follows, in detail:

- Focus Questions
  1. Can Methodology Reasonable be used by Phase II Tribes to Reach Timely Settlements?
  2. Does Methodology Include All Tribal Trust Fund Accounts Administered by DOI during 1972 to 1992?
  3. Does Methodology Exclude Other Time Periods and Asset Mismanagement Claims?

- Five Step Approach
  - Examine AA Tribal Reconciliation Project (TRP) Methodology
  - Examine AA TRP Actual Procedures
  - Share Knowledge
  - Convert Shared Knowledge to Outline
  - Develop Methodology

Questions from the audience:

- What is the downstream v. upstream approach as referenced in the "fill the gap" work performed for five tribes in the AA Project? **Response** by Dave Riley: The AA Project started with the payment or recorded transaction and worked *downward* through document history to investigate the accuracy of the transaction. The alternative process would be to identify the productive resource asset (tract of land or other resource), the revenue it should have produced, and investigate *upward* whether or not the transaction was recorded properly or recorded at all.

- Will the methodology include examination of interest rates that funds should have earned compared to rates actually earned? **Response** by Sandra Johnigan: Our proposal is to have economists or finance experts determine how funds should have been invested to prudently maximize income generation. However, this issue is still under negotiation.

- Who specifically do you consider you are working for? **Response** by Sandra Johnigan: We are not working for an interest but for a process. An accounting expert working on a forensic process has a responsibility to consider the information and issues with integrity and objectivity. However, if we have any inherent bias, it is likely that we have a bias for the Tribes. The project is managed by ITMA and as such we spend more time with ITMA and the participating Tribal members than the federal government.

## MISCELLANEOUS WRAP UP ISSUES

Steve McHugh, ITMA Legal Counsel, discussed the prospect of seeking a statutory determination that the delivery of the AA Reports to tribes does not constitute an accounting in accordance with the 1994 Trust Reform Act and, therefore, cannot trigger the commencement of the statute of limitations for tribes to bring trust accounting claims against the United States. Such a statutory determination would alleviate the immediate need for tribal litigation to avoid DOI's likely defense of the statute of limitations to address tribal accounting concerns.

Shenan Atcitty, ITMA Legal Counsel, provided a brief overview of the Part 112 CFR Regulations to develop an administrative appeal process for tribal accounting claims.

Comments from Tribes included:

- Interest in continuation of the ITMA TTFS Project with an objective to develop a model for use beyond the current seven participating tribes.

- Concern that the DOI is negotiating with tribes but still pursuing the Part 112 Regulations to address tribal trust accounting issues.

- Concern that DOI did not consult with tribes on the previously proposed legislative resolution to tribal trust accounting claims.

- Protective orders from the court or confidentiality agreements between tribes and DOI/DOJ need to be secured to protect the seven TTFS Project tribes