# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE NEZ PERCE TRIBE,
100 Main Street, Lapwai, ID 83540;
THE MESCALERO APACHE TRIBE,
1 Chiricahua Place, Mescalero, NM 88340;
THE TULE RIVER INDIAN TRIBE,
340 N. Reservation Rd, Porterville, CA 93257;
THE HUALAPAI TRIBE,
941 Hualapai Way, Peach Springs, AZ 86434
THE YAKAMA NATION,
401 Fort Road,, Toppenish, WA 98948;
THE KLAMATH TRIBES,
501 Chiloquin Blvd, Chiloquin, OR 97624;
THE YUROK TRIBE,
190 Klamath Blvd, Klamath, CA 95548;
THE CHEYENNE-ARAPAHO TRIBE,
100 Red Moon Circle, Concho, OK 73022;
THE PAWNEE NATION OF OKLAHOMA,
881 Little Dee Drive, Pawnee, OK 74058;
THE SAC AND FOX NATION,
Route 2, Stroud, OK 74049; and, the
THE SANTEE SIOUX TRIBE OF NEBRASKA,
425 Frazier Ave. N., Ste. 2, Niobrara, NE 68760;
for and on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

DIRK KEMPTHORNE
SECRETARY OF THE INTERIOR
United States Department of the Interior
1849 C. Street, N.W.
Washington, D.C. 20240; and,

HENRY M. PAULSON
SECRETARY OF THE TREASURY
United States Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220,

Defendants.

Civil Action No. __________

**COMPLAINT**

**Introduction and Nature of the Action**

1. This is an action seeking declaratory and injunctive relief and for judicial review of final administrative agency action regarding accountings of funds of American Indian and Alaska Native tribes that were or are held in trust by the federal government as trustee for the tribes as beneficiaries. This action arises out of Defendants continuing breaches of inherent and statutory fiduciary accounting and management duties owed to Plaintiffs, including, but not limited to: the duty to provide full and complete accountings of Plaintiffs trust funds and the duty to correct trust fund accounts improperly accounted for and / or improperly managed and make those accounts whole.

2. The federal government has held funds in trust for tribes since at least 1820. *See* U.S. Department of the Interior, Office of the Inspector General, Statement of Assets and Trust Fund Balances at September 30, 1995, of the Trust Funds Managed by the Office of Trust Funds Management, Bureau of Indian Affairs, Audit Rep. No. 97-I-196 at 1 (Dec. 1996). The federal government presently purports to hold about $3 billion in about 1,600 trust fund accounts for over 300 tribes. *See* U.S. General Accounting Office, Performance and Accountability Series: Major Management Challenges and Program Risks, GAO-03-104 (Jan. 2003).

3. Upon information and belief, about forty (40) tribes to date have filed actions against the federal government over one or more of their tribal trust funds. Some of these actions raise claims for trust fund accountings such as those raised in the instant action. Upon information and belief, however, to date no court has ruled on the merits of the claims raised herein. Moreover, over two hundred and fifty (250) tribes have not brought or are unable to bring such claims either due to lack of resources, or because they are unaware that their legal rights are in

Case 1:06-cv-02239-JR Document 18 Filed 12/08/2008 Page 3 of 29

jeopardy of expiring under statutes of limitation. Hence, this class action is necessary to protect the rights of tribes in the class as defined in this Complaint.

4. As the trustee for tribal trust funds, Defendants have an inherent fiduciary duty to provide full and complete accountings of the funds to the beneficiaries. The obligation of a trustee to provide an accounting is a fundamental principle governing the subject of trust administration. *White Mountain Apache Tribe of Arizona v. United States,* 26 Cl.Ct. 446, 448 (Cl.Ct. 1992), *aff d,* 5 F.3d 1506 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1030 (1994), *citing* T. Bogert, Trusts § 141, at 494 (6th ed. 1987).

5. In addition, Congress has codified and reaffirmed the government s preexisting inherent fiduciary duty to provide full and complete accountings of tribal trust funds. *See Cobell v. Norton,* 240 F.3d 1081, 1102 (D.C.Cir. 2001). Since 1987, Congress has mandated that tribal trust funds be audited and reconciled, and that the tribal beneficiaries be provided with accountings of such funds. *See* Pub. L. No. 100-202, 101 Stat. 1329 (1987). This mandate was repeated as provisos in the U.S. Department of the Interior s appropriations bills for seven successive fiscal years, 1988 to 1994. In 1994 Congress enacted the American Indian Trust Management Reform Act, 25 U.S.C. §§ 4001 - 4061. This Act also requires the federal government to provide tribal trust fund beneficiaries with full and complete accountings of their trust funds. 25 U.S.C. § 4044.

6. Defendants never have complied with these inherent fiduciary and statutory mandates. In the 1990s the Bureau of Indian Affairs (BIA) within the Interior Department contracted with the accounting firm of Arthur Andersen & Co. (AA) to examine pursuant to agreed-upon procedures transactions in tribal trust funds for the limited time period of July 1972 through September 1992. In 1996 the BIA provided many tribes with AA Reconciliation Reports of

their funds for this limited time period. *See* Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996). The BIA subsequently admitted that the AA Reconciliation Reports were not full and complete accountings. *See* BIA s Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ( Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds. ). This admission has been echoed by other federal agencies.

7. In 2002, Congress enacted legislation to Encourage the Negotiated Settlement of Tribal Claims, Pub. L. No. 107-153, 116 Stat. 79 (2002). This legislation provides, *inter alia,* that, [n]otwithstanding any other provision of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe in response to section 304 of the American Indian Trust Fund Management Report Act of 1994 (25 U.S.C. 4044) shall be deemed to have been received by the Indian tribe on December 31, 1999. In 2005, this legislation was amended to provide that the reports shall be deemed to have been received on December 31, 2000. Pub. L. No. 109-158, 119 Stat. 2954 (Dec. 30, 2005). There is no chance that Congress will extend further the date in this legislation.

8. The general statute of limitations for claims against the government provides in relevant part that civil actions against the government shall be barred unless filed within six years after the right of action first accrues. 28 U.S.C. § 2401; *see also* Pub. L. No. 109-54, 119 Stat. 499 (2005) ( notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until

the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss ). Notwithstanding Defendants blatant violations of their trust duties, under Pub. L. No. 107-153, as amended, the right of tribes to claim that the AA Reconciliation Reports are not accountings sufficient to commence the running of any statutory limitations period on their trust fund accounting and mismanagement claims may be lost forever after December 31, 2006. This in turn will jeopardize the right of tribes ever to have Defendants provide full and complete accountings of their trust funds, and their right to have Defendants correct the trust fund account balances and make the trust accounts whole as if there never had been breaches of trust. Resolution and relief from this Court is needed on these critical and time-sensitive issues, as well as on the other matters set forth in this Complaint.

## PARTIES

### Plaintiffs

9. Plaintiff the Nez Perce Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

10. Plaintiff the Mescalero Apache Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

11. Plaintiff the Tule River Indian Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

12. Plaintiff the Hualapai Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

13. Plaintiff the Yakama Nation is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

14. Plaintiff the Klamath Tribes are a federally-recognized American Indian tribe and are the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

15. Plaintiff the Yurok Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

16. Plaintiff the Cheyenne-Arapaho Tribe is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

17. Plaintiff the Pawnee Nation of Oklahoma is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

18. Plaintiff the Sac and Fox Nation is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

19. Plaintiff the Santee Sioux Tribe of Nebraska is a federally-recognized American Indian tribe and is the beneficiary of one or more trust funds held by the United States as trustee for which the Tribe has never received an accounting.

**Defendants**

20. Defendant Dirk Kempthorne is the Secretary of the Interior, and in that capacity is charged by law with carrying out the duties and responsibilities of the United States as trustee for Plaintiffs trust funds.

21. Defendant Henry M. Paulson is the Secretary of the Treasury, and in that capacity is charged by law with carrying out various duties and responsibilities of the United States as trustee for Plaintiffs trust funds.

22. Defendants are amendable to suit in this action because, as to the matters complained of herein, 5 U.S.C. § 702 waives the sovereign immunity from suit of the United States and Defendants actions are contrary to law and outside the scope of their authority.

**JURISDICTION AND VENUE**

23. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362. This is a civil action brought by Indian tribes and it arises under federal law, including the Constitution, treaties and agreements between the United States and tribes, and the federal statutes governing the administration and management of property held by the United States in trust for tribes.

24. Venue is properly in this district under 28 U.S.C. § 1391(e) because this is an action in which Defendants are officers and employees of the United States acting in official capacities,

Case 1:06-cv-02239-JR Document 112 Filed 12/28/2008 Page 8 of 30

and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

## COMPLAINT FOR DECLARATORY RELIEF

### Allegations

25. The federal government has assumed the obligations of a fiduciary trustee with respect to tribal trust funds. The responsibility, or trusteeship, for the holding of funds by the United States for the benefit of individual Indians and Indian Tribes is deeply rooted in treaties, laws, and agreements. U.S. Department of the Interior, Office of the Inspector General, Audit Rep. No. 97-I-196 at 1 (Dec. 1996). The government first adopted the policy of holding tribal funds in trust in 1820. *Id*. (emphasis added). Since that time Congress has controlled and managed Tribal and individual Indian [trust] funds through legislation. *Id.* at 1-2.

26. Congress has designated the Secretary of the Department of the Interior as being primarily responsible for the management of Indian affairs generally. 43 U.S.C. § 1457. As such, the Secretary of the Interior is the primary trustee of tribal trust funds. *See* 25 U.S.C. § 4011. The Interior Secretary in turn has delegated his or her authority to several agencies within the Interior Department. Historically this delegation primarily was to the BIA; more recently the delegation has been to the Office of the Special Trustee (OST) for American Indians. *See* 25 U.S.C. §§ 4041 - 4046.

27. With respect to the investment and certain other duties applicable to particular tribal trust funds, Congress also has designated the Secretary of the Department of the Treasury as the trustee of such trust funds. *See*, *e.g.,* 25 U.S.C. §§ 155 and 161a(a).

28. The federal government presently purports to hold about $3 billion in about 1,600 trust fund accounts for over 300 tribes. *See* U.S. General Accounting Office, Performance and Accountability Series: Major Management Challenges and Program Risks, GAO-03-104 (Jan. 2003).

29. The federal government also is the trustee for hundreds of thousands of Individual Indian Money (IIM) accounts. *See* U.S. General Accounting Office, Indian Trust Fund Q&As, GAO/AIMD/OGC-97-23R 3 (Dec. 10, 1996). IIM account holders currently are seeking full and complete accountings which never have been provided and other relief from the government regarding their IIM accounts in this Court in an action styled, *Cobell v. Kempthorne,* CIV No. 96-1285 (RCL) (D.D.C. filed June 10, 1996; class consisting of all present and past IIM account holders certified Feb. 4, 1997). The instant action does not raise any claims relating to IIM accounts.

30. Tribal trust funds generally include: 1) monetary payments required by treaty or in satisfaction of judgments against the United States (judgment funds); and, 2) income or proceeds earned by tribes from land and natural resources that the federal government holds in trust for tribes ( Indian Money Proceeds of Labor (IMPL) accounts ). *See* U.S. Department of the Interior, Bureau of Indian Affairs, Interim Improvement Plan for the Bureau of Indian Affairs, Trust Funds Management Improvement Program, Special Report at 8 (July 1991); U.S. Department of the Interior, Office of the Inspector General, Independent Auditors Report on the Financial Statements for Fiscal Years 1998 and 1997 for the Office of the Special Trustee for American Indians Tribal and Other Special Trust Funds and Individual Indian Monies Trust Funds Managed by the Office of Trust Funds Management, Rep. No. 00-I-434 at 4-5 (May

2000). Tribal trust funds also include the income earned on interest earnings and investments of the funds themselves.

31. Perhaps seventy percent (70 %) of tribal trust funds consist of judgment funds. *See* U.S. Department of the Interior, Office of the Inspector General, Audit Rep. No. 97-I-196 at 3; *accord* H.R. Rep. 103-778 at 13 (1994). Judgment funds generally are monetary judgments awarded by the Indian Claims Commission and the Court of Federal Claims (and its predecessor courts) for the unlawful appropriation of Indian lands and resources by the federal government. *See* 25 U.S.C. § 1401. The government holds judgment funds in trust from the time that Congress appropriates the money to satisfy the award until such time as the funds are validly and properly distributed to the trust beneficiaries. *See Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 639, 646-653 (Fed. Cl. 2006).

32. Perhaps thirty percent (30 %) of tribal trust funds consist of IMPL accounts. *See* H.R. Rep. 103-778 at 13. Various acts of Congress authorize the Secretary of the Interior to manage land (including rights-of-ways therethrough and thereover) and natural resources that the federal government holds in trust for tribes as beneficiaries, and to collect income from tribal trust property and to deposit that income in IMPL accounts for the benefit of the tribal beneficiaries. *See, e.g.,* 25 U.S.C. §§ 155 and 155b

33. Other acts of Congress codify, reaffirm, or provide for the fiduciary investment duties by the federal government of tribal trust funds. *See* 25 U.S.C. §§ 161, 161a, 161b, and 162a.

34. Other acts of Congress codify, reaffirm, or provide for other fiduciary trustee duties by the federal government for tribal trust funds, including, but not limited to, the duties to account for daily and annual trust fund balances, to provide periodic statements of performance

to trust fund beneficiaries, and to cause to be conducted annual audits of trust funds. *See* 25 U.S.C. § 4011.

35. Despite the federal government s well-established responsibilities, [o]ver the years, countless audit reports and internal studies have detailed a litany of problems in BIA s control and oversight of [Indian trust fund] accounts. U.S. General Accounting Office, Testimony before the U.S. Senate Select Committee on Indian Affairs, Financial Management, Status of BIA s Efforts to Resolve Long-Standing Trust Fund Management Problems at 1 (Aug. 12, 1992).

36. Within the Department of the Interior, the Office of the Inspector General (OIG) has issued over fifty (50) recent reports documenting Indian trust fund mismanagement. From 1982 through 1989 alone, the OIG issued thirty (30) audit reports that covered some aspect of the BIA s accounting for and management of Indian trust funds. *See* U.S. Department of the Interior, Office of the Inspector General, Audit Report, Selected Aspects of Indian Trust Fund Activities, Bureau of Indian Affairs, Rep. No. 89-117 at 2 (Sept. 1989).

37. The Government Accountability Office (GAO; formerly, the General Accounting Office) also has issued recently at least twenty (20) reports documenting Indian trust fund misaccounting and mismanagement. *See* U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Individual Indian Accounts, GAO-02-970T (July 2002); U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T (Feb. 2002).

38. As the trustee for tribal trust funds, Defendants have an inherent fiduciary duty to provide full and complete accountings of the funds to the beneficiaries. The obligation of a

trustee to provide an accounting is a fundamental principle governing the subject of trust administration. *White Mountain Apache Tribe of Arizona v. United States,* 26 Cl.Ct. 446, 448 (Cl.Ct. 1992), *aff d,* 5 F.3d 1506 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1030 (1994), *citing* T. Bogert, Trusts § 141, at 494 (6th ed. 1987). The inherent fiduciary duty of the government to account for Indian trust funds has been recognized by the Court of Appeals for this Federal Judicial Circuit. *See Cobell v. Norton,* 240 F.3d 1081, 1102-1104 (D.C.Cir. 2001).

39. In addition, Congress has codified and reaffirmed repeatedly the government s preexisting inherent fiduciary duty to provide full and complete accountings of tribal trust funds. *See Cobell v. Norton,* 240 F.3d at 1102. In 1987 Congress required an audit and reconciliation of all Indian trust fund accounts. *See* Pub. L. No. 100-202, 101 Stat. 1329 (1987). The congressional mandate was for full accountings and audits and reconciliations of all Indian trust fund accounts to the earliest possible date, *i.e.,* a reconstruction of all historical transactions for all years for all Indian trust funds. *See, e.g.,* Pub. L. No. 101-121, 103 Stat. 701 (1989).

40. In 1994 Congress enacted the American Indian Trust Management Reform Act, 25 U.S.C. §§ 4001 - 4061. This Act also requires the federal government to provide Indian trust fund beneficiaries with full and complete accountings of their trust funds, and to cause annual audits of all Indian trust funds to be conducted. 25 U.S.C. §§ 4044 and 4011(c).

41. Unable to comply with these inherent fiduciary duties and congressional mandates on its own, the BIA tried to bid out the project in the early 1990s. *See* U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 2. In 1991 the private accounting firm of Arthur Andersen & Co. (AA) was awarded a $12 million Indian trust fund reconciliation contract. *Id.*; BIA Contract No. CMK00129391. Early on in the project, AA

concluded that due to the level of effort and associated cost and the potential for missing documentation, it was not feasible to reconcile . . . . the IIM accounts. GAO/AIMD-96-63 at 2. AA s work under the contract ultimately consisted of researching only tribal trust fund accounts for the limited time period of Fiscal Years 1973 - 1992. *Id.* at 1. Nevertheless, by the project s end the AA reconciliation contract had been modified twenty-nine (29) times primarily to reduce the project s scope and procedures and its cost had escalated to $ 21 million. *Id.* at 2-3 and 6.

42. Even with respect to the tribal accounts reviewed for this finite period, AA determined that insufficient records were available to conduct full accountings or reconciliations. *See* U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 4-5. The BIA agreed to seven alternative procedures that AA ultimately applied to tribal trust funds: 1) Account Statements; 2) Basic Reconciliation; 3) Investment Analysis; 4) Analytic Review; 5) Systems Reconciliation; 6) Deposit Lag Time; and, 7) Fill the Gap. *Id.* at 16-20. Many of these alternative procedures are detailed in the ninety (90) issue papers approved by the BIA for the project which address changes in the scope and procedures of the reconciliation such as the calculation of transaction dates. *Id.* at 6.

43. In fiscal years 1990 - 1995, Congress mandated that any Indian trust fund audit and reconciliation work be certified by an independent third party. *See, e.g.,* Pub. L. No. 101-121, 103 Stat. 701 (1989) (the reconciliation results must be certified by an independent party as the most complete reconciliation of such funds possible ). In September 1993, the BIA awarded a certification contract to Coopers & Lybrand, CPA. *See* U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust

Fund Account Reconciliation Results, GAO/AIMD-96-63 at 7. However, the BIA terminated the certification contract in November 1995 before the certification could be completed. *Id.* at 7-8. Thus, Defendants never have complied with the congressional reconciliation project certification mandate.

44. AA concluded its tribal trust fund reconciliation work in the fall of 1995 with the preparation of Reconciliation Reports for tribal trust funds for fiscal years 1973 - 1992. Because the American Indian Trust Fund Management Reform Act of 1994 required the Secretary of the Interior to provide tribes with reconciled account statements as of September 30, 1995, 25 U.S.C. § 4044, the BIA prepared its own reconciled account statements for tribal trust funds for the time period fiscal years 1993 through 1995. *See* U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 5 and 16.

45. In 1996, the BIA provided reconciliation report packages to tribes. *See* U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 5-66. The report packages included the fiscal years 1973 - 1992 AA Reconciliation Reports and the BIA s fiscal years 1993 - 1995 reconciled account statements. *Id.* at 1-2, 5-7, and 16.

46. From the beginning, the Interior Department stated that the AA Reconciliation Reports were not audits made in accordance with generally accepted auditing standards. *See* Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996). The Interior Department, however, tried to get tribes to agree that the Reconciliation Reports were as full and complete accountings as possible of their trust

funds. *See* Acknowledgment form appended to Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996).

47. The BIA itself, however, since has admitted that the AA Reconciliation Reports are not full and complete accountings of tribal trust funds. *See* BIA s Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ( Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds. ).

48. The OST also has admitted that the AA Reconciliation Reports are not full and complete accountings. *See* U.S. Department of the Interior, Office of the Special Trustee for American Indians, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 at Part 8, page 5 (Apr. 1997) (the AA Basic Reconciliation effort disclosed the types of problems which prevent a full accounting of tribal trust funds).

49. The GAO has reported repeatedly on the AA reconciliation project shortcomings. *See, e.g.*, U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996). The GAO is of the view that the AA reports do not reflect reliable, accurate, or complete accountings of tribal trust funds because, *inter alia,* they were not conducted pursuant to generally accepted accounting principles, but instead were based on procedures defined by the BIA which imposed limitations on the scope of work to be done and made changes in methodologies over the course of the project; they were premised on the erroneous assumption that accountings could be done based on existing information from the

Case 1:06-cv-02239-JR Document 1 Filed 12/28/2006 Page 16 of 30

BIA, without determining whether that information was accurate historically; and, they were based on accounts for which records and information were non-existent or could not be located. *Id; see also* U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2 (Feb. 7, 2002).

50. Since, and notwithstanding the AA reconciliation project, the federal government s accounting for and management of Indian trust funds remains substandard. The OST s annual financial statements still receive qualified opinions. *See, e.g.*, U.S. Department of the Interior, Office of Inspector General, Executive Summary, Independent Auditors Report on the Financial Statements for Fiscal Years 2000 and 1999 for the Office of the Special Trustee for American Indians Tribal and other Special Trust Funds and Individual Indian Monies Trust Funds Managed by the Office of Trust Funds Management, Rep. No. 01-I-411 (June 2001). Tribal trust funds still have not been audited, and as recently as 2003 the GAO stated that despite some improvements, Indian trust fund account holders have no assurance that their account balances are accurate . . . . U.S. General Accounting Office, Report, Major Management Challenges and Program Risks, Department of the Interior, Performance and Accountability Series, GAO-03-104 (Jan. 2003). As recently as 2005, the OIG reported that DOI procedures and controls were not adequate to ensure that Indian trust fund activities and balances were recorded properly or timely. U.S. Department of the Interior, Office of the Inspector General, Semiannual Report to Congress, Rep. No. 04-S-05 (Apr. 2005)

51. Since the AA reconciliation project, various efforts by tribes and the federal government to reach agreement on precisely what constitutes a full and complete accounting of tribal trust funds, and / or to bring such accounting standards issues to Congress for resolution, have failed or have not yet come to fruition. *See, e.g.,* S. 1439, 109th Cong. § 6;

Case 1:06-cv-00213-JR Document 18-2 Filed 12/28/2006 Page 17 of 29

(2005)( the Indian Trust Reform Act ); S. 1459, 108th Cong. § 3 (2003) ( the American Indian Trust Fund Management Reform Act Amendments ); Preliminary Draft of Proposed Amendments to 25 C.F. R. Part 116 Trust Fund Accounting and Appeals § 116.102 (Dec. 16, 2005), *posted on* http://www.itmatrustfunds.org; U.S. Department of the Interior, Office of the Special Trustee for American Indians, Notice of Availability of Draft To-Be trust business model for public comment, 69 Fed. Reg. 5574-01 (Feb. 5, 2004); U.S. Department of the Interior, Office of the Special Trustee for American Indians, Budget Justifications and Annual Performance Plan Fiscal Year 2000 at 19-26 (FY 2000); U.S. Department of the Interior, Trust Management Improvement Project, High Level Implementation Plan 30-33 (July 1998); U.S. Department of the Interior, Office of the Special Trustee for American Indians, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 at Part 8, page 3-5 and Appendix One at Part 1, page 3-4 (Apr. 1997).

52. This Court in the IIM accounts class action has opined as to what constitutes a proper trust accounting.

> Any formal accounting of a trust conducted by a trustee must include at least four basic processes. First is the collection process, which entails the collection of all documents and records that must be analyzed in order to prepare the accounting. Second is the accounting process proper. In this stage, the trustee analyzes the documents and records it has collected. Utilizing the information contained in such documents, the trustee creates a detailed report describing the trustee s conduct during the relevant time period, including a description of each item of property within the trust corpus, all items of property received into or disbursed from the trust, all income earned by the trust, and all expenses paid by the trust. This report is the accounting statement. Third is the reporting process, which entails the delivery of the accounting statement to the beneficiaries of the trust. These three processes occur sequentially. However, there is also a fourth process that occurs simultaneously with the other three: the quality control process. During the collection process, the quality control process consists of measures taken by the trustee to ensure that it is collecting all documents and records necessary to perform an accounting, and that the information contained in the documents and records it collects are reliable and accurate. During the

Case 1:06-cv-02239-JR Document 13 Filed 02/08/2008 Page 18 of 29

accounting process, the quality control process consists of measures taken by the trustee to ensure that the accounting statement it prepares accurately reflects all of the relevant information contained in the documents and records it has collected. Finally during the reporting process, the quality control process consists of measures taken by the trustee to ensure that all beneficiaries of the trust receive the accounting statement prepared by the trustee, and that they are furnished with all the information they need to make sense of the statement.

*Cobell v. Norton,* 283 F.Supp.2d at 147-148.

The Court of Appeals in the same case has held that

Appellants [the government] never explain how one can give a *fair* and *accurate* accounting of *all* [Indian trust fund] accounts without first reconciling the accounts, taking into account past deposits, withdrawals, and accruals. Indeed, the government s own expert acknowledged that one could not determine an accurate account balance without confirming historical account balances.

. . . . [T]he accounting must be sufficient to serve the purposes for which a trust accounting is typically conducted. By this standard, the district court s conclusion that the management of a trust and rendering of an adequate accounting requires the locating and retention of records, operational computer systems, and adequate staffing was, in plaintiffs words, self-evident. Anything less would produce an inadequate accounting.

*Cobell v. Norton*, 240 F.3d at 1102 -1103 (emphasis in original). The AA Reconciliation Reports do not meet these mandatory standards for full and complete accountings.

53. Since 1990 and to the present, in recognition of the failure of the federal government to provide full and complete tribal trust fund accountings, Congress has tolled the commencement of trust fund claims for sixteen successive fiscal years. *See* Pub. L. No. 101-512, 104 Stat. 1915 (1990); Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. No. 102-381, 106 Stat. 1374 (1992), Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 100 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000);

Pub. L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); (all providing to the effect that, notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds, until the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss ).

54. In an effort to encourage the settlement of tribal trust fund claims, Congress also has addressed specifically the date by which the AA Reconciliation Reports are deemed to have been received. In 2002, Congress provided that, [n]otwithstanding any other provision of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe in response to section 304 of the American Indian Trust Fund Management Report Act of 1994 (25 U.S.C. 4044) shall be deemed to have been received by the Indian tribe on December 31, 1999. In 2005, this legislation was amended to provide that the reports shall be deemed to have been received on December 31, 2000. Pub. L. No. 109-158, 119 Stat. 2954 (Dec. 30, 2005). The legislative history of this legislation states that its purpose is to address the possibility that the statute of limitations is running or has run on legal claims that Indian tribal governments may assert against the United States related to the management of tribal funds that are held in trust by the United States, as a result of reconciliation reports provided to the tribes by the Department of the Interior in response to Section 304 of the American Indian Trust Fund Management Reform Act of 1994 . . . . S. Rep. 107-138 at 1 (2002); *accord* S. Rep. 109-201 at 1 (2005). Congress will not be extending further the date in this legislation.

55. Defendants admittedly and consistently have failed and continue to fail to comply with their inherent fiduciary and statutory duties to provide full and complete accountings to tribal trust fund beneficiaries, and to comply with their other inherent and statutory fiduciary duties as trustees.

56. Upon information and belief, Defendants breaches and continuing breaches of trust, including, but not limited to, their failure to account for and manage properly tribal trust funds, have resulted and continue to result in harm to the Plaintiffs as trust beneficiaries. However, the extent of such harm is unknown to Plaintiffs first and foremost because Defendants never have provided Plaintiffs with full and complete accountings of their trust funds.

57. Plaintiffs have no adequate administrative remedies and have suffered from final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, and from unlawful withholding of or unreasonably delayed agency action. Only this Court can provide to Plaintiffs the relief to which they are entitled.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs bring this action under Fed. Rs. Civ. P. 23(a) and 23(b)(1), 23(b)(2), and 23(b)(3), as a class action on behalf of themselves and all others similarly situated: specifically, American Indian and Alaska Native Tribes which have or which have had trust fund accounts that are or were administered by Defendants; which have received Arthur Andersen Reconciliation Reports; which have not received full and complete accountings of their trust funds; and, which do not have actions pending on December 31, 2006 seeking accountings of their trust funds. Those tribes for and on whose behalf this action is brought under Rule 23 are hereinafter referred to as class members.

59. Plaintiffs the Nez Perce Tribe, the Mescalero Apache Tribe; the Tule River Indian Tribe; the Hualapai Tribe; the Yakama Nation; the Klamath Tribes; the Yurok Tribe; the Cheyenne-Arapaho Tribe; the Pawnee Nation of Oklahoma; the Sac and Fox Nation; and, the Santee Sioux Tribe of Nebraska, are themselves members of the class and are representative of all other members of the class. All named Plaintiffs and class members are or have been beneficiaries of tribal trust funds; they have received AA Reconciliation Reports; they never have received full and complete accountings of their trust funds; and, they do not have pending actions seeking accountings of their trust funds.

60. Upon information and belief, the class members may include over two hundred and fifty (250) American Indian and Alaska Native tribes who are located throughout the country. The joinder in this action of all or even a majority of the class members is impracticable.

61. In this breach of trust action raising claims and continuing claims of misaccounting and mismanagement of tribal trust funds by Defendants, there are substantial questions of law and fact common to the claims and continuing claims of Plaintiffs and to those of each and all of the class members. These questions include, but are not limited to: whether the AA Reconciliation Reports are trust fund accountings sufficient to commence the applicable statute of limitations; the standards of what constitutes full and complete accountings of tribal trust funds; whether and how Defendants must provide full and complete trust fund accountings to Plaintiffs; and, whether and how Defendants must correct the trust fund account balances of Plaintiffs and make those accounts whole. If, and to the extent that, there are any separate legal or factual issues of individual class members, the common determinative and dispositive questions of law and fact predominate over any minor separate issues.

62. The claims and continuing claims of Plaintiffs are typical, in all important respects, of the claims and continuing claims of each and every class member. They involve the same federal laws and legal theories; they are based upon the same fundamental legal obligations and responsibilities that Defendants, as trustees, owe to tribal trust beneficiaries the duties to provide full and complete accountings and to correct account balances; they address the same AA Reconciliation Project; and, they arise out of the same course of breaches of trust and other negligent or wrongful conduct of the fiduciary trustee Defendants as applied to the class and class members.

63. Plaintiffs will fairly and adequately protect the interests of the class and the individual class members. There is no antagonism or conflict between or among the named plaintiffs as class representatives; nor is there antagonism or conflict between or among the class members. Because of the similarity or identicalness of the claims and continuing claims of Plaintiffs and those of individual class members, the successful assertion of Plaintiffs claims herein necessarily will establish determinations of law and fact adequate to prove the liability and continuing liability of Defendants to Plaintiffs and to each and every class member, and the appropriate equitable relief that must be accorded to Plaintiffs and to each and every class member.

64. Counsel for Plaintiffs will fairly and adequately represent the interests of the class in this action. Plaintiffs counsel are qualified and experienced in the substantive and procedural law involved in this action. Plaintiffs counsel are attorneys for the Native American Rights Fund (NARF), a non-profit law firm that has led the development and practice of federal Indian law and policy for the past thirty-six (36) years. NARF attorneys served as counsel for the plaintiff class of individual Indians and tribes in the action in this Court styled *Covelo Indian*

*Community v. Watt,* 551 F.Supp. 366 (D.D.C. 1982), and they serve as counsel for the plaintiff class in the on-going breach of trust IIM accounts action in this Court, *Cobell v. Kempthorne.*

Plaintiffs counsel in the instant action includes: John E. Echohawk, a member of the Pawnee Nation, NARF s long-time Executive Director, and an attorney with thirty-six (36) years of experience in the practice of federal Indian law; Walter R. Echo-Hawk, a member of the Pawnee Nation and attorney with thirty-three (33) years of experience in the practice of federal Indian law at NARF; Donald R. Wharton, an attorney with thirty-three (33) years of experience in the practice of federal Indian law, including the past eighteen (18) years at NARF; and, Melody L. McCoy, a member of the Cherokee Tribe and an attorney with twenty (20) years of experience in the practice of federal Indian law at NARF. Ms. McCoy is the lead attorney in an on-going action in this Court brought by an individual tribe for a trust fund accounting styled *Chippewa Cree Tribe v. Kempthorne,* No. 1:02CV00276 (D.D.C filed Feb. 11, 2002), and in an on-going action in the Court of Federal Claims over mismanagement of a tribal trust fund styled *Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 639 (Fed. Cl. 2006), wherein the Court ruled that the Plaintiffs met the requirements for class action certification. 69 Fed. Cl. at 670. Other members of Plaintiffs counsel s attorney team include Mark C. Tilden, a member of the Navajo Nation and an attorney with sixteen (16) years of experience in the practice of federal Indian law and representation in litigation on behalf of tribes, including twelve (12) years at NARF; David L. Gover, a member of the Choctaw Nation and an attorney with five (5) years of experience in the practice of federal Indian law; and, Dawn S. Baum, a member of the Sokaogon Chippewa Tribe and an attorney with five (5) years of experience. None of the Plaintiffs counsel have any interests that might cause them not to vigorously pursue all of the claims stated herein. Plaintiffs counsel will commit all necessary resources to the representation of the class.

65. In addition, the fiduciary accounting and management expertise and services of the consulting firm of Rocky Hill Advisors, Inc, have been retained by Plaintiffs for this action. Rocky Hill Advisors, Inc., has been the principal expert witness in the on-going *Chippewa Cree Tribe v. Kempthorne* and *Chippewa Cree Tribe v. U.S.* actions referenced above, where it has provided expert testimony and analysis of the very kind of tribal trust fund accounting and management issues that are raised in this action, including extensive analysis of AA Reconciliation Reports.

66. With respect to Plaintiffs claims and continuing claims, Defendants have acted or refused to act on grounds generally and equally applicable to Plaintiffs and to each and every member of the class, thereby making appropriate final declaratory and other equitable relief with respect to the class as a whole.

67. A class action is superior to any other available method for the fair and efficient adjudication of Plaintiffs claims and continuing claims and those of each and every class member. Many class members do not have the resources to prosecute their separate claims. The class is manageable and it is desirable to concentrate the litigation of their claims in the interests of judicial economy. The prosecution of separate actions by individual class members would create a risk of establishing incompatible standards of conduct for Defendants, and / or would create a risk of multiple adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of the other class members not parties to the adjudications or which would substantially impair or impede the ability of the class members to protect their interests.

## COUNT I

**Declaratory Judgment that the Arthur Andersen Reconciliation Reports are not full and complete accountings of tribal trust funds and setting forth the standards that would constitute such accountings**

68. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 67 above.

69. Defendants inherent and statutory fiduciary duties include, among others, the duty to provide Plaintiffs with full and compete accountings of each of Plaintiffs trust funds.

70. The AA Reconciliation Reports provided by Defendants to Plaintiffs are not full and complete accountings of each of Plaintiffs trust funds, and Defendants never otherwise have provided Plaintiffs with full and complete accountings of each of their trust funds.

71. Plaintiffs are entitled to a declaratory judgment that the AA Reconciliation Reports provided by Defendants to Plaintiffs are not full and complete accountings of each of Plaintiffs trust funds, and that Defendants never otherwise have provided Plaintiffs with full and complete accountings of each of their trust funds as required by law.

72. This Court has the power to declare the standards governing full and complete accountings of Plaintiffs trust funds.

73. Plaintiffs are entitled to a declaratory judgment regarding the standards governing full and complete accountings of Plaintiffs trust funds.

## COUNT II

**Injunction Compelling an Accounting and That Accounts be Corrected**

74. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 67 above.

75. Defendants' failure and continuing failure to provide Plaintiffs with full and complete accountings of their trust funds has caused and will continue to cause each Plaintiff irreparable injury because without such accountings they are unable to determine whether there have been losses and other harm to their trust funds.

76. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to perform their duty and provide each Plaintiff with full and complete accountings of each of their trust funds pursuant to accounting standards ordered by this Court.

77. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to correct Plaintiffs trust fund account balances in accordance with the standards for full and complete accountings, and to make their accounts whole.

**COUNT III**

**Administrative Procedures Act**

78. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 67 above.

79. Plaintiffs have suffered legal wrongs and adverse effects and have been aggrieved because of final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, and from unlawful withholding of or unreasonably delayed agency action.

80. Plaintiffs are entitled to have this Court decide all relevant questions of law concerning tribal trust fund accountings and to have this Court issue corresponding declaratory and other equitable relief.

81. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to perform their duty and provide each Plaintiff with full and complete accountings of each of their trust funds pursuant to accounting standards ordered by this Court.

82. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to correct Plaintiffs  trust fund account balances in accordance with the standards for full and complete accountings, and to make their accounts whole.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief for themselves and all other class members:

1. For certification of this action as a class action with the class consisting of all American Indian and Alaska Native Tribes which have or which have had trust fund accounts that are or were administered by Defendants; which have received Arthur Andersen Reconciliation Reports; which have not received full and complete accountings of their trust funds; and, which do not have actions pending on December 31, 2006 seeking accountings of their trust funds;

2. For designation of the named Plaintiffs as class representatives of this class;

3. For a determination that Defendants are in violation of the Administrative Procedures Act, and that Defendants are amenable to suit in this action either under the APA or because Defendants  actions are contrary to law and outside the scope of their authority.

4. For a determination that Defendants have been and continue to be in breach of trust, negligent, or engaged in wrongful conduct regarding the trust funds of Plaintiffs;

5. For a declaration that the AA Reconciliation Reports provided by Defendants to Plaintiffs are not full and complete accountings of each of Plaintiffs trust funds, and that Defendants never otherwise have provided Plaintiffs with full and complete accountings of each of their trust funds as required by law;

6. For a declaration of the accounting standards governing full and complete accounts of Plaintiffs trust funds;

7. For a mandatory injunction compelling Defendants to provide Plaintiffs with full and complete accountings of their trust funds;

8. For a mandatory injunction compelling Defendants to correct Plaintiffs trust fund account balances make the accounts whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants up to and including the date of entry of final judgment in this action;

9. For an award of Plaintiffs costs of suit, including, without limitation, attorneys fees and other costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and attorneys fees, expert witness costs, and other costs as allowed by law and equity ; and,

10. For such other, further, or different relief as may be just and equitable.

Dated this 27th Day of December, 2006

Respectfully submitted,

Mark C. Tilden, DC Bar No. 459438
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
telephone (303) 447-8760
facsimile (303) 443-7776
e-mail mctilden@narf.org

ATTORNEY FOR PLAINTIFFS