# EXHIBIT 3

No. 92-166

# In the Supreme Court of the United States

OCTOBER TERM, 1992

KEENE CORPORATION, PETITIONER

*v.*

UNITED STATES OF AMERICA

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT*

## BRIEF FOR THE UNITED STATES

WILLIAM C. BRYSON
*Acting Solicitor General*
STUART M. GERSON
*Assistant Attorney General*
MAUREEN E. MAHONEY
*Deputy Solicitor General*
ROBERT A. LONG, JR.
*Assistant to the Solicitor General*
BARBARA C. BIDDLE
ROBERT M. LOEB
*Attorneys*
*Department of Justice*
*Washington, D.C. 20530*
*(202) 514-2217*

## QUESTIONS PRESENTED

Under 28 U.S.C. 1500, the Court of Federal Claims lacks subject matter jurisdiction over "any claim for or in respect to which the plaintiff * * * has pending in any other court any suit or process against the United States" or its agents. The questions presented are:

1. Whether Section 1500 applies if a plaintiff is unable to pursue all its legal theories in a single action.

2. Whether Section 1500 applies if the plaintiff simultaneously litigates a dispute in the Court of Federal Claims and another court, but terminates the other action before the Court of Federal Claims rules on a motion to dismiss for lack of jurisdiction.

3. Whether the decision in this case should apply to petitioner.

# TABLE OF CONTENTS


| | Page |
|---|---|
| Opinions below | 1 |
| Jurisdiction | 2 |
| Statutory provision involved | 2 |
| Statement: | |
| 1. District Court litigation | 3 |
| a. Pennsylvania | 3 |
| b. New York | 3 |
| c. District of Columbia | 4 |
| 2. Court of Federal Claims litigation | 4 |
| a. Keene I | 4 |
| b. Keene II | 4 |
| 3. The Section 1500 motions | 5 |
| 4. The court of appeals' decisions | 6 |
| a. The panel decision | 6 |
| b. The en banc decision | 7 |
| Summary of argument | 10 |
| Argument: | |
| I. Section 1500 bars simultaneous litigation of a dispute in the Court of Federal Claims and another court | 14 |
| A. Section 1500 provides that the Court of Federal Claims lacks jurisdiction if the plaintiff has a related action pending in another court | 14 |
| B. The purpose of Section 1500 is to bar plaintiffs from suing the United States or its agents in the Court of Federal Claims and another court | 17 |
| C. Section 1500 is not limited to legal theories that must be litigated in a single action under principles of claim preclusion | 21 |

Argument—Continued: Page

D. Section 1500 does not permit a plaintiff to engage in simultaneous litigation against the United States as long as the second action is terminated before the Court of Federal Claims rules on a motion to dismiss ..... 29

E. The jurisdictional bar of Section 1500 does not depend on the order in which a plaintiff's actions are filed ..... 36

F. The courts are not free to disregard clear statutory language to avoid harsh results, and Section 1500 is not as harsh as petitioner and its amici suggest ..... 39

II. The doctrines of non-retroactivity and equitable tolling do not apply in this case ..... 41

A. Non-retroactivity is inappropriate in this case ..... 41

B. Equitable tolling is inappropriate in this case ..... 43

Conclusion ..... 46

## TABLE OF AUTHORITIES

Cases:

*Allied Materials & Equipment Co.* v. *United States*, 210 Ct. Cl. 714 (1976) ..... 27

*Boston Five Cents Savings Bank* v. *United States*, 864 F.2d 137 (Fed. Cir. 1988) ..... 27

*British American Tobacco Co.*, 89 Ct. Cl. 438 (1931), cert. denied, 310 U.S. 627 (1940) ..... 25, 34

*Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966) ..... 8, 34, 35, 36, 40

*Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196 (1988) ..... 41, 42

*Casman* v. *United States*, 135 Ct. Cl. 647 (1956) ..... 8, 26, 27, 28, 36, 40

*Catawba Indian Tribe of South Carolina* v. *United States*, No. 92-5018 (Fed. Cir. Jan. 6, 1993) ..... 44

*Chevron Oil Co.* v. *Huson*, 404 U.S. 97 (1971) ..... 43



Cases—Continued: Page

*Christianson* v. *Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ..... 32

*Corona Coal Co.* v. *United States*, 263 U.S. 537 (1924) ..... 8, 12, 15, 16, 28, 38, 39

*De La Rama S.S. Co.* v. *United States*, 344 U.S. 386 (1953) ..... 32

*Estate of Cowart* v. *Nicklos Drilling Co.*, 112 S.Ct. 2589 (1992) ..... 15

*Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368 (1981) ..... 9, 13, 41, 42

*Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U.S. 222 (1957) ..... 30

*Frantz Equip. Co.* v. *United States*, 120 Cl. Ct. 314 (1951) ..... 35

*GAF Corp.* v. *United States*:

818 F.2d 901 (D.C. Cir. 1987) ..... 4

19 Cl. Ct. 490 (1990) ..... 6

923 F.2d 947 (Fed. Cir. 1991), cert. denied, 112 S. Ct. 965 (1992) ..... 6

*Griffith* v. *Kentucky*, 479 U.S. 314 (1987) ..... 42

*Hallstrom* v. *Tillamook County*, 493 U.S. 20 (1989) ..... 33

*Hill* v. *United States*, 8 Cl. Ct. 382 (1985) ..... 16, 27

*Hossein* v. *United States*, 218 Ct. Cl. 727 (1978) ..... 34

*Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ..... 32

*Irwin* v. *Veterans Admin.*, 111 S. Ct. 453 (1990) ..... 33, 43, 44

*James B. Beam Distilling Co.* v. *Georgia*, 111 S. Ct. 2439 (1991) ..... 42-43

*Japanese War Notes Claimants Ass'n* v. *United States*, 373 F.2d 356 (Ct. Cl.), cert. denied, 389 U.S. 971 (1967) ..... 44

*Johns-Manville Corp.* v. *United States*, 855 F.2d 1556 (Fed. Cir. 1988), cert. denied, 489 U.S. 1066 (1989) ..... 5, 15, 23, 24, 25, 26, 44

*Keene Corp.* v. *United States*:

700 F.2d 836 (2d Cir. 1983), cert. denied, 464 U.S. 864 (1983) ..... 4

Cases—Continued: Page

591 F. Supp. 1340 (D.D.C. 1984) .......... 4
12 Cl. Ct. 197 (1987) .......... 5
*King* v. *St. Vincent's Hospital*, 112 S. Ct. 570 (1991) .......... 15
*Lemon* v. *Kurtzman*, 403 U.S. 602 (1971) .......... 15
*Lorillard* v. *Pons*, 434 U.S. 575 (1978) .......... 25
*Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. 648 (1957) .......... 25, 34
*Maher* v. *Gagne*, 448 U.S. 122 (1980) .......... 26
*Mansfield, Coldwater & Lake Michigan Ry.* v. *Swan*, 111 U.S. 379 (1884) .......... 32
*Mathews* v. *Eldridge*, 424 U.S. 319 (1976) .......... 33
*Matson Navigation Co.* v. *United States*, 284 U.S. 352 (1932) .......... 17
*Mitchell* v. *Clark*, 110 U.S. 633 (1884) .......... 44
*National Cored Forgings Co.* v. *United States*, 132 Ct. Cl. 11 (1955) .......... 25
*Nevada* v. *United States*, 463 U.S. 110 (1983) .......... 25
*Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826 (1989) .......... 29, 33
*Nonella* v. *United States*, 16 Cl. Ct. 290 (1989) .......... 27
*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .......... 41
*Pennsylvania R.R.* v. *United States*, 363 U.S. 202 (1960) .......... 35
*Pitt River Home & Agricultural Coop. Assoc.*, 215 Ct. Cl. 959 (1977) .......... 27
*Prillman* v. *United States*, 220 Ct. Cl. 677 (1979) .......... 27
*Russello* v. *United States*, 464 U.S. 16 (1983) .......... 31
*Skinner & Eddy Corp., Ex parte*, 265 U.S. 86 (1924) .......... 16, 30
*Smith* v. *Sperling*, 354 U.S. 91 (1957) .......... 29
*Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966) .......... 6, 9, 36, 37, 38, 39
*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312 (1988) .......... 33, 41
*United Mine Workers* v. *Gibbs*, 383 U.S. 715 (1966) .......... 26





Cases—Continued: Page

*Weinberger* v. *Salfi*, 422 U.S. 749 (1975) .......... 33
*Wessel, Duval & Co.* v. *United States*, 129 Ct. Cl. 464 (1954) .......... 32, 34

Constitution, statutes and rules:

U.S. Const.:
Art. III .......... 13, 42
§ 2 .......... 42
Amend. I (Establishment Clause) .......... 15
Amend. V .......... 3
Act of Dec. 1, 1873, tit. 13, ch. 21, § 1067, 18 Stat. 197 (Rev. Stat. § 1067 (1874)) .......... 19
Act of June 25, 1868, ch. 71, 15 Stat. 75 .......... 17
§ 8, 15 Stat. 77 .......... 12, 17-18, 19, 20-21, 30, 37
Act of Mar. 3, 1911 (Judicial Code), ch. 231, 36 Stat. 1135 .......... 19
§ 154, 36 Stat. 1138 .......... 16, 17, 19
Act of June 25, 1948, ch. 646, § 1500, 62 Stat. 942 .......... 16, 17, 19
Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820 .......... 17
§ 3, 12 Stat. 820 .......... 17
Court of Federal Claims Technical and Procedural Improvement Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506:
§ 902, 106 Stat. 4516 .......... 1
§§ 901-911, 106 Stat. 4516-4520 .......... 20
§ 911, 106 Stat. 4520 .......... 1
Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, § 133(e)(1) .......... 20
Federal Employees Compensation Act, 5 U.S.C. 1500 .......... 3
Federal Tort Claims Act:
28 U.S.C. 1346(b) .......... 35
28 U.S.C. 2675(a) .......... 3
Little Tucker Act, 28 U.S.C. 1346(a)(2) .......... 40

Statutes and rules—Continued: Page

Tucker Act:
- 28 U.S.C. 1346(a) .......... 24, 34
- 28 U.S.C. 1491 .......... 4, 24, 34
- 28 U.S.C. 1491(a)(1) .......... 30
- 28 U.S.C. 1491(a)(2) .......... 28, 40
- 28 U.S.C. 1496 .......... 30
- 28 U.S.C. 1501 .......... 30
- 28 U.S.C. 1503 .......... 30
- 28 U.S.C. 2501 .......... 40

Rev. Stat. § 1067 (1874) .......... 19
- 28 U.S.C. 1492 .......... 44
- 28 U.S.C. 1497 .......... 30
- 28 U.S.C. 1499 .......... 30
- 28 U.S.C. 1500 .......... *passim*
  - Reviser's notes (28 U.S.C. at 1862 (1948)) .......... 30
- 28 U.S.C. 1502 .......... 30
- 28 U.S.C. 1508 .......... 31

28 U.S.C. 1631 .......... 36, 40
28 U.S.C. 1927 .......... 39
28 U.S.C. 2509(c) .......... 44
42 U.S.C. 405(g) .......... 34
42 U.S.C. 1988 .......... 26
Fed. R. Civ. P.:
- Rule 11 .......... 39
- Rule 21 .......... 33

Sup. Ct. R. 24.1(a) .......... 21

Miscellaneous:
- Cong. Globe, 40th Cong., 2d Sess. (1868) .......... 11, 18, 19, 38
- 2 Cong. Rec. 129 (1873) .......... 19
- 138 Cong. Rec. S4830-S4832 (daily ed. Apr. 2, 1992) .......... 20
- 138 Cong. Rec. D465 (daily ed. Apr. 29, 1992) .......... 20
- H.R. Rep. No. 308, 80th Cong., 1st Sess. (1947) .......... 30
- Journal of the Senate, 40th Cong., 2d Sess. (1868) .......... 18



Miscellaneous—Continued: Page
- Note, *Private Bills in Congress*, 79 Harv. L. Rev. 1684 (1966) .......... 44
- Restatement (Second) of Judgments (1982) .......... 22, 23, 26, 42
- Robert L. Stern, Eugene Gressman, Stephen M. Shapiro, *Supreme Court Practice* (6th ed. (1986) .......... 36
- S. 2521, 102d Cong., 2d Sess. (1992) .......... 20
- David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L.J. 573 (1967) .......... 17, 28, 38
- *Webster's Third New International Dictionary* (1986) .......... 15

# In the Supreme Court of the United States

OCTOBER TERM, 1992

No. 92-166

KEENE CORPORATION, PETITIONER

*v.*

UNITED STATES OF AMERICA

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT*

## BRIEF FOR THE UNITED STATES

### OPINIONS BELOW

The en banc opinion of the court of appeals (Pet. App. A1-A34) is reported at 962 F.2d 1013. The opinion of the Court of Federal Claims [1] (Pet. App. E1-E27) is reported at 17 Cl. Ct. 146.

[1] Effective October 29, 1992, Congress renamed the United States Claims Court the "United States Court of Federal Claims." See Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102-572, §§ 902, 911, 106 Stat. 4516, 4520. Throughout this brief, we refer to the court by its new name.

## JURISDICTION

The judgment of the court of appeals was entered on April 23, 1992. The petition for a writ of certiorari was filed on July 22, 1992, and was granted on October 19, 1992. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATUTORY PROVISION INVOLVED

Section 1500 of Title 28, U.S. Code, provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

## STATEMENT

Petitioner manufactured and sold products containing asbestos. From 1979 to 1987, petitioner litigated separate civil actions against the United States in three district courts and in the Court of Federal Claims. In each action, petitioner sought reimbursement for its liability to workers injured as a result of exposure to asbestos while working at naval shipyards or for private companies under contract to the United States Navy.[2]

[2] Petitioner's lawsuits were part of massive litigation against the United States over asbestos claims. At its height, the government was being sued in some 3,000 cases and faced potential liability in excess of $40 billion. The Department of Justice created a special 35-lawyer section within its Civil Division solely to defend this litigation.



### 1. *District Court Litigation*

a. *Pennsylvania.* In June 1979, petitioner filed a third-party complaint against the United States in *Miller* v. *Johns-Manville Prods. Corp.*, No. 78-1283E (W.D. Pa.). Petitioner sought indemnification or contribution for any tort liability that it might incur for injuries caused by the plaintiff's exposure to asbestos while working for a private company that performed work for the United States Navy pursuant to a government contract. Pet. App. I1-I3. In May 1980, the court granted petitioner's motion to dismiss its third-party complaint without prejudice. Pet. App. E15.

b. *New York.* In January 1980, petitioner filed an omnibus tort action against the United States in the United States District Court for the Southern District of New York. *Keene Corp.* v. *United States*, No. 80-Civ.-0401GLG. Petitioner sought to recover from the United States amounts that it had paid or expected to pay to some 14,000 asbestos tort claimants who were exposed to asbestos while working at naval shipyards or for private companies acting under contract for the United States Navy. In addition, petitioner asserted that the federal government's recoupment of payments under the Federal Employees Compensation Act, 5 U.S.C. 1500 (FECA), was a taking of petitioner's property without just compensation in violation of the Fifth Amendment. See J.A. 6-39.

On September 30, 1981, the district court dismissed the action, primarily on the ground that petitioner's administrative tort claims against the United States failed to satisfy the requirements of the Federal Tort Claims Act (FTCA), 28 U.S.C. 2675(a). The court also held that it lacked jurisdiction to decide petitioner's takings claims. J.A. 41-57. The court of

appeals affirmed the district court's ruling, *Keene Corp.* v. *United States*, 700 F.2d 836 (2d Cir.), and this Court denied certiorari, 464 U.S. 864 (1983).

c. *District of Columbia.* In July 1982, after the district court in the Southern District of New York had rejected petitioner's tort claims, petitioner brought a second omnibus tort action against the United States in the United States District Court for the District of Columbia. In July 1984, the district court held that petitioner was attempting to relitigate issues decided in the New York litigation, and that consequently principles of issue preclusion required dismissal of the action. *Keene Corp.* v. *United States*, 591 F. Supp. 1340, 1345-1349 (D.D.C. 1984). The court of appeals affirmed the district court's ruling. *GAF Corp.* v. *United States*, 818 F.2d 901, 912-916 (D.C. Cir. 1987).

**2. *Court of Federal Claims Litigation***

a. *Keene I.* In December 1979—while petitioner's third-party complaint in *Miller* was pending—petitioner filed an action against the United States in the Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491. *Keene Corp.* v. *United States*, No. 579-79C. Petitioner sought indemnity from the United States for any amounts paid by petitioner to asbestos tort claimants exposed to asbestos while working at naval shipyards or for companies under contract to the United States Navy. Pet. App. H1-H20.

b. *Keene II.* On September 25, 1981—while petitioner's omnibus tort action was pending in New York—petitioner filed a second action in the Court of Federal Claims under the Tucker Act. *Keene Corp.* v. *United States*, No. 585-81C. In that action, petitioner reiterated its claim that the government's recoupment of payments under FECA was a taking of property without just compensation. Pet. App. F1-F12.



**3. *The Section 1500 Motions***

a. In February 1987, the United States filed a motion in the Court of Federal Claims pursuant to 28 U.S.C. 1500 to dismiss petitioner's Tucker Act complaints, and similar complaints brought by several other asbestos manufacturers, for lack of subject matter jurisdiction. The government contended that the Court of Federal Claims lacked jurisdiction because petitioner and the other claimants had district court suits involving the same dispute pending at the same time they were litigating their actions in the Court of Federal Claims.

In April 1987, the Court of Federal Claims granted the government's motion as to one claimant, Johns-Manville Corporation. *Keene Corp.* v. *United States*, 12 Cl. Ct. 197 (1987). The court did not rule on the motion with respect to petitioner or the other manufacturers, but noted that their claims likely would be dismissed under Section 1500 for want of jurisdiction. *Id.* at 198-199 n.1. The court of appeals affirmed, *Johns-Manville Corp.* v. *United States*, 855 F.2d 1556 (Fed. Cir. 1988), and this Court denied certiorari, 489 U.S. 1066 (1989).

b. In November 1988, the government filed a second motion to dismiss petitioner's claims under 28 U.S.C. 1500. The Court of Federal Claims granted the government's motion as to all plaintiffs except

GAF Corporation.[3] The court held that Section 1500 required dismissal of the other asbestos manufacturers' claims because, at the time the actions were filed in the Court of Federal Claims, the plaintiffs had other actions involving the same dispute pending in other courts against the United States. The Court of Federal Claims rejected petitioner's argument that the subsequent termination of the district court actions vested it with jurisdiction over the complaints. Pet. App. E1-E27.

#### 4. *The Court of Appeals' Decisions*

a. *The Panel Decision.* A panel of the court of appeals reversed. Pet. App. D1-D25. The panel held that "when an earlier-filed district court case is finally dismissed before the Claims Court entertains and acts on a § 1500 motion to dismiss, § 1500 does not bar Claims Court jurisdiction even though the dismissal may have occurred after the filing of the Claims Court action." Pet. App. D22. The panel acknowledged that a "not * * * unreasonable reading of the statute" would bar the Court of Federal Claims from exercising jurisdiction if the plaintiff had a related action pending in another court when it filed an action in the Claims Court. *Id.* at D23. But the

[3] The Court of Federal Claims, relying on *Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966), held that Section 1500 did not apply to GAF because GAF filed its district court action one day after it filed suit in the Court of Federal Claims. Pet. App. E25-E26. The Court of Federal Claims subsequently rejected GAF's claims on the merits. *GAF Corp.* v. *United States*, 19 Cl. Ct. 490 (1990). The court of appeals affirmed that ruling, 923 F.2d 947 (Fed. Cir. 1991), and this Court denied certiorari, 112 S. Ct. 965 (1992).



court found that the statutory language was ambiguous, and that "policy and legislative history support a different reading." *Ibid.*

Judge Mayer dissented. He concluded that the panel's holding was "contrary to the unambiguous language of the statute, its purpose and history." Pet. App. D26. Judge Mayer reasoned that the jurisdiction of the Court of Federal Claims "should not depend on when a motion to dismiss under section 1500 is filed or is considered by this court." *Ibid.*

b. *The En Banc Decision.* The court of appeals granted rehearing en banc and affirmed the decision of the Court of Federal Claims in an opinion joined by nine of the ten judges on the court. Pet. App. A1-A24.

i. The court of appeals comprehensively reexamined prior judicial decisions construing Section 1500 and concluded that "section 1500 is rife with judicially created exceptions and rationalizations to the point that it no longer serves its purposes: to force an election of forum and to prevent simultaneous dual litigation against the government." Pet. App. A14. The court observed that "[i]t is a rare plaintiff who could not find an exception to his liking if he tried hard enough." *Id.* at A14-A15. The court declined petitioner's invitation to continue "the charade." *Id.* at A15.

The court of appeals concluded that the plain meaning of the statute and its purpose mandate a bright-line rule that the Court of Federal Claims lacks jurisdiction over a claim if the same claim is pending in another court. Accordingly, the court held:

> 1) if the same claim is pending in another court at the time the complaint is filed in the Claims

> Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction regardless of when the Court memorializes the fact by order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply.

Pet. App. A15.

The court of appeals declined to construe Section 1500 as permitting "a plaintiff to maintain cases in both courts until the government moves to dismiss the Claims Court suit or until a judge addresses the motion." Pet. App. A16. The court explained that such a rule would be "contrary to th[e] recognized purpose of section 1500," because it would "compel the government to defend two suits simultaneously." *Ibid.*

ii. The court of appeals reexamined several of its prior decisions that created exceptions to the jurisdictional bar of Section 1500 in order to ameliorate its perceived harshness. Adhering to this Court's decision in *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924), the court of appeals held that possible hardship to a plaintiff "does not justify rewriting the statute." Pet. App. A17. Accordingly, the court overruled *Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966), and *Casman* v. *United States*, 135 Ct. Cl. 647 (1956). Pet. App. A17 & n.3. *Brown* and *Casman* had both construed Section 1500 to allow plaintiffs to maintain simultaneous actions concerning the same dispute in the Court of Federal Claims and another court. Pet. App. A13-A14, A17. The court also overruled *Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966), which had held that Section 1500 did not apply if the plaintiff first filed an action in the Court of Federal Claims and thereafter filed an action concerning the same dispute in another court. Pet. App. A18-A19.



iii. The court reaffirmed the principle that two actions involve the same "claim" for the purposes of Section 1500 if they are based on the same operative facts. The court rejected the contention that a "claim" refers to actions based on the same legal theory. The court explained that such a narrow construction of the term "claim" would render the statute ineffective against the very abuse it was intended to prevent. Pet. App. A19-A20.

iv. Finally, the court of appeals rejected the petitioner's argument that its decision should not be given retroactive effect. The court explained that, because a federal court "lacks discretion to consider the merits of a case over which it is without jurisdiction, * * * a jurisdictional ruling may never be made prospective only." Pet. App. A22-A23, quoting *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379 (1981).

v. Chief Judge Nies joined the court's opinion, but also filed a separate opinion suggesting that, in some circumstances when a party is barred by Section 1500 from litigating simultaneous actions against the United States, equitable tolling of the statute of limitations may be appropriate. Pet. App. A24-A25.

vi. Judge Plager dissented. Pet. App. A25-A34. Judge Plager would have ruled that "when an earlier-filed district court case is finally dismissed before the

Claims Court entertains and acts on a § 1500 motion to dismiss, § 1500 does not bar Claims Court jurisdiction." *Id.* at A31.

**SUMMARY OF ARGUMENT**

1. a. Section 1500 provides that the Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States" or its agents. Congress hardly could have chosen more sweeping and definitive language to bar plaintiffs from litigating a dispute against the government simultaneously in the Court of Federal Claims and another court. Section 1500 applies to any claim "in respect to which" the plaintiff has pending another action—that is, any claim that "relates to" or is "concerned with" a pending action. Because Section 1500 applies only if the plaintiff "has pending" another action, it does not bar a plaintiff from bringing an action in the Court of Federal Claims if a related action in another court is no longer pending. But the Court of Federal Claims plainly lacks jurisdiction while a related action is pending in another court, and the termination of the related action does not confer jurisdiction retroactively on the Court of Federal Claims.

b. The legislative history of Section 1500 confirms that Congress intended to bar a plaintiff from engaging in simultaneous litigation of a dispute in the Court of Federal Claims and another court. The statute was specifically intended to apply to the so-called "cotton claimants," a group of plaintiffs who brought actions against the United States in the Court of Claims and parallel actions against federal officials in other courts. The stated purpose of the statute was "to put that class of persons to their election either to leave the Court of Claims or to leave the other courts." Cong. Globe, 40th Cong., 2d Sess. 2769 (1868).



c. Petitioner is incorrect in contending that Section 1500 applies only if principles of claim preclusion would require the plaintiff to pursue all its legal theories in a single action. By its terms, Section 1500 applies if a claim is "in respect to"—*i.e.*, related to—a pending action in another court. A claim that is based on the same set of facts as a pending action plainly is related to the action. Moreover, petitioner's proposed construction would foster the very type of simultaneous litigation that Section 1500 was designed to stop. The Court of Federal Claims has no jurisdiction to hear claims under the Federal Tort Claims Act; the district courts have no jurisdiction to hear claims under the Tucker Act for more than $10,000. Consequently, petitioner's proposal would allow plaintiffs to engage in simultaneous litigation of a dispute in the Court of Federal Claims (on a contract theory) and in the district court (on a tort theory). Indeed, petitioner's construction of the statute would have allowed the cotton claimants to continue to maintain simultaneous actions against the United States and federal officials.

d. Petitioner is also incorrect in contending that Section 1500 allows a plaintiff to engage in simultaneous litigation against the United States as long as the other actions are terminated before the Court of Federal Claims rules on a motion to dismiss for lack of jurisdiction. Section 1500 plainly provides that the Court of Federal Claims "shall not have jurisdiction" if the plaintiff "has pending" a related

action against the United States in another court. The Court of Federal Claims does not acquire jurisdiction merely because the government fails to learn of the existence of a related action or the Court of Federal Claims fails to rule on a motion to dismiss. That reading of Section 1500 is confirmed by the original statutory language, which provided that "no person shall file or prosecute any claim * * * for or in respect to which he * * * has pending any suit or process." 15 Stat. 77. When Congress replaced that phrase in 1948, it did not intend to alter the meaning of the statute.

Petitioner's proposed construction would not prevent dual simultaneous litigation. Given the minimal requirements of notice pleading, and the difficulties of coordinating the government's numerous litigating components, a plaintiff could often litigate against the government on two fronts at the same time. If plaintiffs understand that the Court of Federal Claims will be required to dismiss their action if they litigate simultaneously in another forum, Section 1500 will be largely self-policing.

Petitioner's construction also ignores the fundamental rule that limitations on a court's subject matter jurisdiction cannot be waived by the parties or the court. There is no source of authority that would permit a court to overlook the defect in its subject matter jurisdiction.

e. Although petitioner contends that Section 1500 is out of harmony with the legal landscape and produces harsh results, this Court has already declined a litigant's invitation to "add an exception [to Section 1500] to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924). In any event, a rule barring litigation of the same dispute in two courts at once discourages



wasteful and duplicative litigation and conserves public resources. Those policies are hardly out of keeping with the current legal landscape. Moreover, petitioner and its amici greatly exaggerate the harsh results that will flow from interpreting Section 1500 as it is written. In many cases, plaintiffs will be able to obtain complete relief in a single action. Where that is not possible, the generous six-year period of limitations applicable to Tucker Act claims affords plaintiffs an opportunity to bring a second action in all but the most protracted cases. If a plaintiff has acted diligently and refrained from engaging in simultaneous litigation, equitable tolling of a statute of limitations may be available in appropriate circumstances.

2. a. The court of appeals correctly concluded that it was required to give its decision retroactive effect. Because the federal courts have no authority to expand their subject matter jurisdiction, "a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379 (1981). In any event, there is no basis for petitioner's suggestion that the Court's decision should not apply to petitioner. Apart from the Article III concerns that petitioner's argument raises, petitioner is not entitled to a prospective ruling because it is not relying on clear past precedent, but rather on arguments that prior judicial exceptions to Section 1500 should be expanded.

b. Petitioner did not seek equitable tolling of the statute of limitations in the courts below, and those courts did not consider that issue. Accordingly, this Court should not address it either. In any event, equitable tolling is not appropriate in the circumstances of this case. Petitioner did precisely what

Section 1500 forbids. It pursued multiple actions in multiple courts seeking essentially the same relief against the United States based on essentially the same facts—the government's alleged responsibility for injuries to workers exposed to asbestos while working in naval shipyards or on federal contracts. Indeed, petitioner litigated precisely the same takings claim simultaneously in the Court of Federal Claims and the district court. None of the established judicial exceptions to Section 1500 authorized petitioner's extraordinary seven-year campaign of simultaneous litigation. Accordingly, petitioner is not entitled to equitable relief.

## ARGUMENT

### I. SECTION 1500 BARS SIMULTANEOUS LITIGATION OF A DISPUTE IN THE COURT OF FEDERAL CLAIMS AND ANOTHER COURT

#### A. Section 1500 Provides That The Court Of Federal Claims Lacks Jurisdiction If The Plaintiff Has A Related Action Pending In Another Court

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

As the Court observed in construing the predecessor of Section 1500, "the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we



are not at liberty to add an exception in order to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924). See generally *Estate of Cowart* v. *Nicklos Drilling Co.*, 112 S. Ct. 2589, 2594 (1992); *King* v. *St. Vincent's Hospital*, 112 S. Ct. 570, 575 n.14 (1991). Section 1500 speaks in the language of subject matter jurisdiction. It provides in absolute and sweeping terms that the Court of Federal Claims "*shall not* have jurisdiction of *any* claim for *or in respect to which* the plaintiff * * * has pending in *any* other court *any* suit or process" against the United States or "*any* person * * * acting *or professing to act*, directly *or indirectly* under the authority of the United States" (emphasis added). Congress hardly could have chosen more definitive and emphatic language to bar plaintiffs from litigating a dispute with the government simultaneously in the Court of Federal Claims and in another court.

As petitioner observes (Pet. Br. 18), the word "claim" lacks a single "plain" meaning. See *Johns-Manville Corp.* v. *United States*, 855 F.2d 1556, 1560 (Fed. Cir. 1988), cert. denied, 489 U.S. 1066 (1989). But Congress eliminated any ambiguity that attaches to the term "claim" by providing that the Court of Federal Claims lacks "jurisdiction of any claim for *or in respect to which* the plaintiff * * * has pending * * * any other suit or process" against the United States or its agents. A claim is "in respect to" a suit if it "relate[s] to" the suit, or is "concerned with" the suit, or "ha[s] regard or reference to the suit. *Webster's Third New International Dictionary* 1934 (1986). Cf. *Lemon* v. *Kurtzman*, 403 U.S. 602, 612 (1971) (discussing meaning of the word "respecting" in the Establishment Clause of the First Amendment).

Accordingly, the language of Section 1500 bars the Court of Federal Claims from assuming jurisdiction over a claim if the plaintiff has a related action pending in another court.

By its terms, Section 1500 deprives the Court of Federal Claims of jurisdiction if the plaintiff "has pending" a related suit in another court. If the related action is no longer pending, the statutory language does not prevent the plaintiff from bringing a subsequent action in the Court of Federal Claims. But a "pending" action does not become a "non-pending" action merely because the parties fail to bring it to the attention of the Court of Federal Claims, or that court fails to rule on a motion to dismiss. See *Hill* v. *United States*, 8 Cl. Ct. 382, 385-386 (1985) ("words 'shall not' are an absolute bar depriving this court of any discretion, whatsoever, when duplicative claims are filed").[4]

[4] This Court's prior decisions construing the predecessor of 28 U.S.C. 1500, Section 154 of the Judicial Code, consistently have adhered to the plain language of the statute. In *Corona Coal Co.* v. *United States*, 263 U.S. 537 (1924), the Court of Claims dismissed the plaintiff's action, and the plaintiff took an appeal to this Court. After the Court of Claims entered judgment, the plaintiff brought separate actions in the district court "because [the actions] were about to become barred by expiration of the statutory period of limitation." 263 U.S. at 540. This Court held that Section 154 required dismissal of the appeal. It concluded that "the words of the statute are plain," and therefore the Court is "not at liberty to add an exception in order to remove apparent hardship in particular cases." *Ibid.* See also *Ex parte Skinner & Eddy Corp.*, 265 U.S. 86, 95 (1924) (where the Court of Claims grants the plaintiff's motion to dismiss, and the plaintiff then brings a suit in state court "on substantially the same causes of action," Section 154 "necessarily prevent[s] the [plaintiff] from suing on those claims in the Court of Claims, and exclude[s] its jurisdiction of them"); *Matson Navigation Co.* v. *United States*, 284 U.S. 352 (1932) (plain language of Section 154 inapplicable if simultaneous action is against the United States rather than a federal official). In 1948, Section 154 was amended to apply to multiple actions against the United States. See p. 20, *infra*.



**B. The Purpose Of Section 1500 Is To Bar Plaintiffs From Suing The United States Or Its Agents In The Court Of Federal Claims And Another Court**

1. The legislative history of 28 U.S.C. 1500 confirms that Congress intended to bar simultaneous litigation of a dispute in the Court of Federal Claims and another court. During the Civil War, the government seized property in the Confederate States pursuant to the Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820. Persons claiming ownership of property seized under that Act were permitted to bring an action against the United States in the Court of Claims to recover any proceeds from the sale of the property, but were required to prove that they had not given any aid or comfort to the rebellion. § 3, 12 Stat. 820. The "cotton claimants" (so called because most of the claims were for seized cotton) not only brought a large number of actions against the United States in the Court of Claims, but also brought parallel tort actions against federal officials in other courts. See Pet. App. A7; David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L.J. 573, 575-576 (1967).

Congress enacted the original version of Section 1500, Section 8 of the Act of June 25, 1868, ch. 71, 15 Stat. 77, to put an end to this dual litigation. Section 8 provided:

> *And be it further enacted*, That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time of the cause of action * * * arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77.[5]

Senator Edmunds, the sponsor of the legislation, explained its purpose:

> The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time en-

[5] The text of Section 8, as passed by both the Senate and the House of Representatives, provided that "no person shall file or prosecute any claim or suit in the Court of Claims, or on appeal therefrom, for or in respect to which he * * * shall have commenced and has pending, *or shall commence and have pending*, any suit or process in any other court" against a federal official. Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) (statement of Sen. Edmunds); *id.* at 3269 (emphasis added); Journal of the Senate, 40th Cong., 2d Sess. 445 (1868). The enrolled version of the bill omitted the highlighted clause. There is no recorded explanation of the omission. Pet. App. A8-A9 n.1, A19.



> deavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

Cong. Globe, 40th Cong., 2d Sess. 2769 (1868). The stated purpose of Section 8 was thus to require plaintiffs to make an election between a suit in the Court of Claims and one brought in another court against an agent of the government. *Ibid.*

Section 8 was incorporated into the Revised Statutes of 1874 with minor changes that were not intended to alter its meaning. See 2 Cong. Rec. 129 (1873) (statement of Rep. Butler).[6] It was later reenacted without change as Section 154 of the Judicial Code of 1911. Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138. Congress reenacted the statute as Section 1500 of the Judicial Code of 1948. See Act of June 25, 1948, ch. 646, 62 Stat. 942. The 1948 legislation (1) deleted the phrase "or in the Supreme

[6] The 1874 statute provided:

> No person shall file or prosecute in the Court of Claims, or in the Supreme Court on appeal therefrom, any claim for or in respect to which he or any assignee of his has pending in any other court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States.

Revised Statutes, Title 13, ch. 21, § 1067, 18 Stat. 197 (1874).

Court on appeal therefrom" as unnecessary; (2) added the phrase "against the United States" in order to bar simultaneous actions against the United States as well as actions against federal officials; and (3) replaced the phrase "No person shall file or prosecute" with "The Court of Claims shall not have jurisdiction of" to make clear that Section 1500 is a jurisdictional statute. See Reviser's Notes, 28 U.S.C. 1500, at 1862 (1948).

2. We do not contend that Section 1500 must be interpreted to bar successive litigation—only simultaneous litigation. It is true, as petitioner recognizes (Pet. Br. 31), that Senator Edmunds' statement indicates that Section 8 was intended to advance not only "a general policy seeking to protect the Government against the burdens of multiple

[7] In 1982, Congress passed legislation substituting the new Claims Court for the old Court of Claims. See Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 40. Most recently, in 1992, Congress passed legislation substituting "Court of Federal Claims" for "Claims Court." See note 1, *supra*.

A bill entitled the "Court of Federal Claims Technical and Procedural Improvements Act of 1992," introduced by Senator Heflin on April 2, 1992, would have repealed Section 1500. See S. 2521, 102d Cong., 2d Sess. § 10(c) (1992); 138 Cong. Rec. S4830-S4832 (daily ed. Apr. 2, 1992). On April 29, 1992, six days after the court of appeals issued its en banc decision in this case, the Senate Committee on the Judiciary held hearings on the proposed legislation. See 138 Cong. Rec. D465 (daily ed. Apr. 29, 1992). As ultimately enacted, the Court of Federal Claims Technical and Procedural Improvements Act of 1992 amended Section 1500 by substituting the "Court of Federal Claims" for the "Claims Court," but did not repeal or otherwise modify the statute. See Pub. L. No. 102-572, §§ 901-911, 106 Stat. 4516-4520.



simultaneous litigation," but also to "preclud[e] * * * a second adjudication after a first decision on the merits." By its terms, however, the statute applies only if the plaintiff "*has pending* any suit or process in any other court." 15 Stat. 77 (emphasis added). The language of the statute thus does not preclude a second adjudication if the first action is no longer "pending." See p. 16, *supra*.

**C. Section 1500 Is Not Limited To Legal Theories That Must Be Litigated In A Single Action Under Principles Of Claim Preclusion**

1. In its brief on the merits, petitioner argues (Pet. Br. 18-32) that Section 1500 applies only if principles of claim preclusion would require the plaintiff to present all its legal theories in a single action. Petitioner contends (Pet. Br. 18-19) that the word "claim" in Section 1500 is "naturally read as referring to the law of claim preclusion," and that "[t]he statute should be read to deem a claim in one case 'for or in respect to [the claim]' in another only when ordinary claim-splitting preclusion principles would say that they should (and, therefore, could) be brought together if they were both brought against the United States." That argument was not presented to the courts below or in the petition for certiorari.[8] In any event, it is incorrect.

[8] The questions presented in the petition for certiorari (which focused on the meaning of the statutory phrase "has pending" rather than the definition of the term "claim") bear little resemblance to the questions presented in petitioner's brief on the merits. Compare Pet. i with Pet. Br. i. A brief on the merits "may not raise additional questions or change the substance of the questions already presented in [the petition]." Sup. Ct. R. 24.1(a).

Contrary to petitioner's contention, the term "any claim" in Section 1500 is most naturally read not as a veiled reference to the law of claim preclusion, but simply as a reference to any claim for relief in the Court of Federal Claims. Moreover, petitioner's argument ignores the statutory language that immediately follows the term "any claim." Under Section 1500, the Court of Federal Claims lacks jurisdiction over "any claim for *or in respect to which* the plaintiff * * * has pending any suit or process in any other court" (emphasis added). As we have explained, see pp. 15-16, *supra*, a claim is "in respect to" a suit or process if it "relates to" or is "concerned with" the suit. Accordingly, the proper jurisdictional inquiry under Section 1500 is not whether the plaintiff is pursuing one or several legal theories—let alone whether principles of claim preclusion would permit or require him to pursue all his theories in a single action—but simply whether the plaintiff's claim is *related* to other litigation that he has pending in another court. The court of appeals' definition of a claim as including all legal "theories that arise from the same operative facts," Pet. App. A20, is consistent with this statutory language.

Even if petitioner were justified in looking to principles of claim preclusion, a "claim" for preclusion purposes consists of "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (1982). A "transaction" refers to "a natural grouping or common nucleus of operative fact. * * * That a number of different legal theories casting liability



on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories * * * would call for different measures of liability or different kinds of relief." *Id.* comments b and c. That is precisely the approach followed by the court of appeals in *Johns-Manville Corp.* v. *United States*, 855 F.2d 1563 (Fed. Cir. 1988), and reaffirmed in this case. See Pet. App. A19. Applying that definition of "claim," petitioner's tort actions were not only actions "respecting" petitioner's claims in the Court of Federal Claims, but were actions on the very same claim.[9]

2. Petitioner relies not on the definition of "claim" for purposes of claim preclusion, but on an exception to the general rule of preclusion that applies if "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments § 26(1)(c) & comment c (1982). There is no basis in the language or history of Section 1500 for applying that exception to permit simultaneous litigation in the Court of Federal Claims and other courts.

Petitioner's proposed construction of Section 1500 would almost never prevent a plaintiff from litigat-

---

[9] Petitioner's attempt to link Section 1500 to principles of claim preclusion is misguided for another reason as well. The law of claim and issue preclusion governs the preclusive effect of judgments. See Restatement (Second) of Judgments ch. 1, at 1 (1982). In the absence of a judgment, principles of claim and issue preclusion are not concerned with simultaneous litigation of a dispute in different courts.

ing a dispute with the United States in two courts at once. The Court of Federal Claims has no jurisdiction to decide claims under the Federal Tort Claims Act, and the district courts have no jurisdiction to decide claims under the Tucker Act if the amount sought by the plaintiff is greater than $10,000. See 28 U.S.C. 1346(a), 1491. Consequently, petitioner's construction of Section 1500 would allow any plaintiff seeking more than $10,000 to litigate against the United States in district court under a tort theory while simultaneously litigating the very same set of facts, and seeking the very same relief, under a contract or taking theory in the Court of Federal Claims. Indeed, petitioner's construction of the statute would have allowed the cotton claimants to maintain simultaneous actions against the United States and federal officials. Because the cotton claimants themselves were pursuing different legal theories that could not be asserted together in one court, Section 1500 should not be read to reach only actions involving identical legal theories, or actions that can all be brought in the same court.[10]

---

[10] Petitioner's contention (Pet. Br. 32) that its interpretation of Section 1500 would have prevented the cotton claimants from suing in two courts at once is unconvincing. No court had jurisdiction to decide both the cotton claimants' statutory claims against the United States and their tort claims against federal officials. See *Johns-Manville*, 855 F.2d at 1561. Petitioner asserts that principles of claim preclusion would have required plaintiffs to bring statutory claims and tort claims *against the United States* in a single suit. But as petitioner recognizes (Pet. Br. 32), *no* court had jurisdiction to entertain tort claims against the United States in 1868. Petitioner's assertion thus rests on an unsupported assumption that *if* the cotton claimants had been permitted to pursue tort claims against the United States in 1868, they would have been permitted to do so in the Court of Claims. Even assuming that such claims could have been brought together, it is far from clear that principles of claim preclusion would have barred separate actions. "Although the 'same evidence' standard was '[o]ne of the tests' used at the time, *The Haytian Republic*, 154 U.S. 118, 125 (1894), it was not the only one." See *Nevada* v. *United States*, 463 U.S. 110, 130-131 n.12 (1983).



3. Petitioner is wrong in asserting (Pet. Br. 22) that "it was the clear law in the Court of Claims that Section 1500 did not apply where two claims could not both be brought in the same court." In fact, petitioner's proposed construction of Section 1500 goes well beyond any of the judicial exceptions to the statute that were overruled by the court of appeals.

a. The court of appeals reaffirmed the principle that Section 1500 applies when two actions arise out of a single "set of underlying facts." Pet. App. A19. See *Johns-Manville Corp.*, 855 F.2d at 1563 (for purposes of Section 1500, "claim" is "defined by the operative facts alleged, not the legal theories raised"); *Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. 648, 652 (1957); *National Cored Forgings Co.* v. *United States*, 132 Ct. Cl. 11, 19-20 (1955); *British American Tobacco Co.* v. *United States*, 89 Ct. Cl. 438, 440 (1931), cert. denied, 310 U.S. 627 (1940). Because petitioner's proposed construction of Section 1500 was not settled law—and, indeed, is contrary to it—it does not "deserve respect under the doctrine of *stare decisis*." Pet. Br. 22.[11]

---

[11] For the same reason, there is no basis for presuming that Congress was aware of petitioner's proposed construction or intended to adopt it when it amended Section 1500 in 1982 to substitute the Claims Court for the Court of Claims. See *Lorillard* v. *Pons*, 434 U.S. 575, 580-581 (1978). Indeed,

There is also no basis for petitioner's suggestion (Pet. Br. 24) that the court of appeals' definition of "claim" should be rejected because it is too vague or difficult to apply. The court of appeals' definition applies not only in the context of Section 1500, but in a variety of other contexts as well. See, *e.g.*, *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 725 (1966) (pendent jurisdiction over nonfederal claims that "derive from a common nucleus of operative fact"); *Maher* v. *Gagne*, 448 U.S. 122, 132-133 n.15 (1980) (attorney's fees available under 42 U.S.C. 1988 for claims arising out of a "common nucleus of operative fact"); Restatement (Second) of Judgments § 24(1) (1982) (claim preclusion).

b. In *Casman* v. *United States*, 135 Ct. Cl. 647 (1956), the court created an exception to Section 1500 that applied when a plaintiff sought damages in the Court of Federal Claims and equitable relief in another court. The plaintiff in *Casman* was a former federal employee who sought reinstatement in the district court and back pay in the Court of Claims. The Court of Claims concluded that Section 1500 should not be construed to bar simultaneous litigation when (1) the remedy sought in the district court is "entirely different" from that sought in the Court of Claims, and (2) the Court of Claims has no judisdiction to award the type of relief sought in the district court. 135 Ct. Cl. at 649-650. See also *Johns-Manville*, 855 F.2d at 1566-1567 (*Casman* exception

---

to the extent that such arguments have weight, Congress's recent amendment of Section 1500 following the court of appeals' en banc decision, and its failure to enact a proposal to repeal Section 1500, undermines petitioner's position. See note 7, *supra*.



does not apply where plaintiff is seeking monetary relief from both courts); *Boston Five Cents Savings Bank* v. *United States*, 864 F.2d 137, 139 (Fed. Cir. 1988) (*Casman* limited to situations where "different types of relief are sought"); *Pitt River Home & Agricultural Coop. Assoc.*, 215 Ct. Cl. 959, 961 (1977) (inquiry under *Casman* is whether the plaintiff is "seeking the same relief" in the Court of Claims as in the district court); *Nonella* v. *United States*, 16 Cl. Ct. 290, 293 (1989) (*Casman* exception is "limited" to "where the plaintiff seeks substantially different relief in each forum"); *Hill* v. *United States*, 8 Cl. Ct. at 387-388 (the *Casman* exception does not apply where plaintiff seeks monetary relief in both the district court and the Claims Court, even if she also seeks declaratory relief in the district court).[12]

The *Casman* exception does not apply in this case. See Pet. App. D20; Alaska Br. 23; Cheyenne-Arapaho Tribes Br. 6. The relief sought in petitioner's district court actions was not "entirely different" from

---

[12] In addition to *Casman*, petitioner cites two brief orders of the Court of Claims in support of its assertion that it was "clear law" that Section 1500 did not apply whenever two claims could not be brought in the same court. Pet. Br. 22 (citing *Allied Materials & Equipment Co.* v. *United States*, 210 Ct. Cl. 714 (1976), and *Prillman* v. *United States*, 220 Ct. Cl. 677 (1979)). The facts of *Prillman* were similar to those of *Casman*—a discharged federal employee sought both reinstatement and back pay in excess of $10,000. And although *Allied Materials* read *Casman* to apply when a plaintiff cannot "combine all its claims" in a single court, 210 Ct. Cl. at 716, that reading is contrary to the overwhelming weight of authority limiting *Casman* to situations in which the plaintiff sought different forms of relief.

the relief it sought in the Court of Federal Claims. 135 Ct. Cl. at 650. On the contrary, petitioners' actions in the district courts and its actions in the Court of Federal Claims sought precisely the same type of relief—damages for injuries caused by workers' exposure to asbestos. Consequently, the Court need not address the validity of the *Casman* exception in this case.

In any event, the court of appeals correctly concluded that *Casman* is inconsistent with the language and purpose of Section 1500. A suit seeking equitable relief rather than damages is nevertheless a "suit or process." And a claim for damages plainly is a claim "with respect to" a suit for injunctive relief based on the same set of facts. As a leading commentator has observed, "*Casman* is one of several major decisions under section 1500 in which the Court of Claims has overridden the words of the section in favor of a result it deemed desirable." See Schwartz, 55 Geo. L.J. at 587-588. But where "the words of the statute are plain," the courts are "not at liberty to add an exception in order to remove apparent hardship." *Corona Coal*, 263 U.S. at 540.[13]

[13] In 1982, Congress eliminated the problem that concerned the court in *Casman*. Federal employees are now permitted to seek both back pay and reinstatement in a single action in the Court of Federal Claims. See 28 U.S.C. 1491(a)(2).



**D. Section 1500 Does Not Permit A Plaintiff To Engage In Simultaneous Litigation Against the United States As Long As The Second Action Is Terminated Before The Court Of Federal Claims Rules On A Motion To Dismiss**

Petitioner also contends (Pet. Br. 33-42) that Section 1500 does not prevent a plaintiff from maintaining simultaneous actions in the Court of Federal Claims and another court as long as the plaintiff dismisses (or otherwise terminates) the second action before the Court of Federal Claims rules on a motion to dismiss for want of jurisdiction. As petitioner concedes (Pet. Br. 33), its position is contrary to the rule that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (citing *Smith* v. *Sperling*, 354 U.S. 91, 93 n.1 (1957)). It is also inconsistent with the language and purpose of Section 1500.

1. By its terms, Section 1500 deprives the Court of Federal Claims of subject matter jurisdiction if the plaintiff "has pending" another action. Pet. App. A16. A "pending" action is not transformed into a "non-pending" action merely because the parties fail to bring the existence of the action to the attention of the Court of Federal Claims, or that court fails to rule on a motion to dismiss. If the related action is no longer pending, Section 1500 does not prevent the plaintiff from bringing an action in the Court of Federal Claims. But the fact that an action in another court has ended does not imply that the Court of Federal Claims had jurisdiction while the other action was pending.

Our reading of Section 1500 is confirmed by the original statutory language, which provided that "no person shall file or prosecute any claim * * * for or in respect to which he * * * has pending any suit or process in any other court." 15 Stat. 77. That language plainly barred a plaintiff from filing or litigating an action in the Court of Claims while a related action was pending. In 1948, Congress replaced the phrase "no person shall file or prosecute" with the phrase "[t]he United States Court of Claims shall not have jurisdiction of." That change of "phraseology," see Reviser's Notes, 28 U.S.C. 1500, at 1862 (1948); H.R. Rep. No. 308, 80th Cong., 1st Sess. A140 (1947), merely recognized that the statute is jurisdictional in nature. See *Ex parte Skinner & Eddy Corp.*, 265 U.S. at 95. There is thus no basis for concluding that the 1948 amendments authorized plaintiffs to engage in simultaneous litigation. See *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957) (no change in the law should be presumed from the 1948 revision of the Judicial Code "unless an intent to make such changes is clearly expressed").[14]

[14] There is no merit to petitioner's argument (Pet. Br. 34) that the phrase "shall not have jurisdiction" in Section 1500 should be construed to mean "shall not have jurisdiction to render judgment." To be sure, other provisions of Title 28 that *confer* jurisdiction on the Court of Federal Claims use the phrase "shall have jurisdiction to render judgment." See, *e.g.*, 28 U.S.C. 1491(a)(1), 1496, 1497, 1499, 1503. But Congress used the phrase "shall not have jurisdiction" in other provisions that *limit* the jurisdiction of the Court of Federal Claims. See 28 U.S.C. 1501, 1502. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally assumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U.S. 16, 23 (1983). The obvious meaning of the phrase "shall not have jurisdiction" is that the Court of Federal Claims lacks jurisdiction to hear or render judgment on the claim. Cf. 28 U.S.C. 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 or 6228(a) of the Internal Revenue Code of 1954.").



2. Petitioner's proposed construction would permit plaintiffs to litigate simultaneously in the Court of Federal Claims and a district court as long as they were careful to terminate the district court litigation before the Court of Federal Claims ruled on a motion to dismiss for lack of jurisdiction. That rule would not prevent—and, indeed, would encourage—dual simultaneous litigation against the government. Because of the minimal requirements of notice pleading under the Federal Rules of Civil Procedure, the government might not learn until well into the litigation that a complaint filed in a district court involved the same dispute as a complaint filed in the Court of Federal Claims. The government's ability to identify related actions would be further limited by the sheer volume of civil litigation against the United States, and by the difficulties of coordinating the government's many litigating components, including the various divisions of the Department of Justice, the 94 United States Attorneys' Offices, and numerous federal agencies.

Petitioner's proposed rule "would foster just the type of occurrence which section 1500 was enacted to prevent, i.e., the maintaining of two suits against the

United States on the same claims and at the same time in two different courts." *Wessel, Duval & Co.* v. *United States*, 129 Ct. Cl. 464, 465 (1954). In contrast, the court of appeals' construction furthers the statutory purpose of preventing dual simultaneous litigation. The plaintiff is in the best position to determine whether it is litigating the same dispute in two different forums. If plaintiffs know that the Court of Federal Claims will be required to dismiss their action if they pursue simultaneous litigation in another court, Section 1500 will be largely self-policing.

3. Section 1500 imposes a limitation on the subject matter jurisdiction of the Court of Federal Claims. It is well established that such limitations cannot be waived by the parties or the court; it is the court's duty to police its own jurisdictional boundaries. See *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Mansfield, Coldwater & Lake Michigan Ry.* v. *Swan*, 111 U.S. 379, 383 (1884). Petitioner would disregard that fundamental principle by treating Section 1500 as a "free floating jurisdictional bar that attaches only when the government files a motion to dismiss or, worse, when the court gets around to acting on it." Pet. App. A16. See also *id.* at D26. Similarly, petitioner's contention (Pet. Br. 35-36) that the Court of Federal Claims should be permitted to overlook defects in its subject matter jurisdiction is inconsistent with the principle that a federal court has no discretion to empower itself to act where Congress has chosen to deprive it of subject matter jurisdiction. See *Christianson* v. *Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *De La Rama S.S. Co.* v. *United States*, 344 U.S. 386, 390 (1953). See also



*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988) ("litigant's failure to clear a jurisdictional hurdle can never be 'harmless' or waived by a court").

*Newman-Green* v. *Alfonzo-Larrain*, 490 U.S. 826 (1989), does not support petitioner's argument. In that diversity case, the Court held that a court of appeals has authority to grant a motion to dismiss a dispensable nondiverse party without remanding to the district court. The Court found a "source of authority" for that action in Fed. R. Civ. P. 21. 490 U.S. at 832. There is no analogous source of authority that would permit the Court of Federal Claims to disregard the jurisdictional bar of Section 1500. In *Newman-Green*, moreover, the Court emphasized that the authority to dismiss a nondiverse party should be exercised only after careful consideration of whether dismissal "will prejudice any of the parties in the litigation." 490 U.S. at 837-838. When a plaintiff disregards the clear command of Section 1500, the government is prejudiced by having to defend itself in two courts at the same time. Cf. *Hallstrom* v. *Tillamook County*, 493 U.S. 20, 26-31 (1989) (declining to give "flexible" construction to clear statutory precondition to suit).[15]

---

[15] Petitioner also contends (Pet. Br. 37) that its proposed construction of Section 1500 is analogous to the rule that equitable tolling of statutes of limitations is available in suits against the United States unless Congress has expressed a contrary intent. See *Irwin* v. *Veterans Admin.*, 111 S. Ct. 453, 457 (1990). In Section 1500, however, Congress clearly provided that the Court of Federal claims "shall not have jurisdiction of any claim * * * in respect to which" the plaintiff has another action pending.

*Weinberger* v. *Salfi*, 422 U.S. 749 (1975), and *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), are inapposite. Those cases

4. Petitioner contends (Pet. Br. 38-39) that its construction was adopted in *Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966), and therefore is entitled to respect under principles of *stare decisis*. But the holding of *Brown* is more circumscribed than petitioner suggests; has no application to the facts at issue; and is, in any event, inconsistent with Section 1500.

a. In *Brown*, a widow and her children pursued takings claims for more than $10,000 simultaneously in the Court of Claims and a district court. *Brown*, 358 F.2d at 1004-1005. The district court dismissed the action for want of jurisdiction. See 28 U.S.C. 1346(a)(2), 1491. The Court of Claims concluded that Section 1500 did not require it to dismiss plaintiff's action. The court expressly distinguished several of its prior decisions holding that Section 1500 barred the Claims Court action on the ground that the district court clearly had jurisdiction of the claims in those cases. 358 F.2d at 1005 (citing *British American Tobacco*, 89 Ct. Cl. at 441; *Wessel, Duval & Co.*, 129 Ct. Cl. at 465; *Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. at 652 (1957)). See also *Hossein* v. *United States*, 218 Ct. Cl. 727, 729 (1978) (declining to dismiss contract claim for $250,000 because district court lacked subject matter jurisdiction). The *Brown* exception

concerned "the requirement of a 'final decision' contained in [42 U.S.C.] 405(g)," a requirement that "is not precisely analogous to * * * more classical jurisdictional requirements" because "[t]he term 'final decision' is not only left undefined by the Act but its meaning is left to the Secretary to flesh out by regulation." 422 U.S. at 766. Here, in contrast, the language of Section 1500 is clear.



therefore applied only when a plaintiff filed its claims in a court that clearly lacked subject matter jurisdiction.[16]

Petitioner, accordingly, cannot excuse its simultaneous litigation in multiple forums by invoking the *Brown* exception. The district courts clearly had jurisdiction over petitioner's tort claims. See 28 U.S.C. 1346(b) (vesting the district courts with exclusive jurisdiction over tort claims against the United States). Petitioner does not contend otherwise.

b. In any event, the court of appeals correctly held that *Brown* fundamentally misconstrued the language and purpose of Section 1500. The jurisdictional bar of Section 1500 "is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by plaintiff therein." See *Frantz Equip. Co.* v. *United States*, 120 Ct. Cl. 312, 314 (1951). Rather, the language of Section 1500 provides that the Court of Federal Claims shall not have jurisdiction if there is a related "suit or process" in

[16] It follows that petitioner's proposed construction is not entitled to *stare decisis* effect, and there is no basis for its argument that Congress may be presumed to have implicitly enacted it into law when it amended Section 1500 in 1982. See p. 25 & note 11, *supra*.

Petitioner also relies (Pet. Br. 35 n.18) on this Court's decision in *Pennsylvania R.R.* v. *United States*, 363 U.S. 202 (1960), for the proposition that the jurisdictional bar of Section 1500 may be waived. In that case, the Court simply noted that the Court of Claims had denied a motion to dismiss under 28 U.S.C. 1500, and "its action * * * is not challenged here." 363 U.S. at 204. That remark hardly can be read as a considered determination that the parties may waive the requirements of Section 1500.

another court. A suit or process in which it is determined that the court lacks jurisdiction is nevertheless a "suit or process." [17]

**E. The Jurisdictional Bar Of Section 1500 Does Not Depend On The Order In Which A Plaintiff's Actions Are Filed**

In its petition for certiorari, petitioners' principal argument (Pet. 9-12) was that the court of appeals erred in overruling *Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966). *Tecon* held that Section 1500 does not apply if the plaintiff files an action in the Court of Federal Claims before it files a related action in another court. See 343 F.2d at 946, 949. In its brief on the merits, petitioner appears to abandon its *Tecon* argument.[18] In any event, *Tecon* does not provide a basis for jurisdiction over petitioner's claims.

1. The *Tecon* exception, like the *Casman* and *Brown* exceptions, would not apply in this case. When petitioner filed its first action in the Court of

[17] In 1982, Congress solved the problem addressed in *Brown* by enacting 28 U.S.C. 1631. Section 1631 provides that whenever a federal court finds that it lacks jurisdiction in a civil action, it may transfer the action to any other court in which the action could have been brought, "and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." See Pet. App. A17 (recognizing that *Brown* exception is no longer necessary).

[18] See Robert L. Stern, Eugene Gressman & Stephen M. Shapiro, *Supreme Court Practice* § 13.8 (6th ed. 1986) ("A question set forth in a petition * * * will be considered abandoned if not reiterated and argued in the brief on the merits once review has been granted.").



Federal Claims, it had a third party complaint against the United States pending in the *Miller* litigation in Pennsylvania. And when petitioner filed its second action in the Court of Claims, it had an omnibus tort action against the United States pending in the Southern District of New York. See pp. 3-5, *supra*.

2. In any event, the court of appeals correctly rejected *Tecon*. Section 1500 provides that the Court of Federal Claims lacks jurisdiction over "any claim * * * in respect to which the plaintiff * * * has pending in any other court any suit or process." 28 U.S.C. 1500. Contrary to that clear statutory command, *Tecon* allowed the Court of Federal Claims to exercise jurisdiction even though a related action was pending in another court. As the court of appeals explained, "[a] case filed subsequent to a [Court of Federal Claims] complaint is clearly a 'pending * * * suit or process.'" Pet. App. A18.

That conclusion is confirmed by the original language of the statute, which provided that "no person shall file *or prosecute* any claim * * * for or in respect to which he * * * has pending any suit or process in any other court." 15 Stat. 77 (emphasis added). In addition, the original version of the statute allowed plaintiffs with actions pending in the Court of Claims 30 days to withdraw or dismiss suits "*now pending* in such other court." See 15 Stat. 77 (1868) (emphasis added). That provision was not limited to actions in other courts filed before the action in the Court of Claims.

The *Tecon* court erroneously relied on the fact that Senator Edmunds's bill barred litigation in the Court of Claims "for or in respect to" actions which the plaintiff "shall have commenced and has pending, *or*

*shall commence and have pending.*" Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) (emphasis added). The court of appeals correctly declined to attribute any significance to the omission of the highlighted phrase from the statute. As the Court explained:

> Aside from the fact that there is no indication why section 8, as enacted, did not include this language, its deletion did not change the plain meaning of the statute.

Pet. App. A19. See note 5, *supra*.

3. *Tecon* allowed plaintiffs to engage in simultaneous litigation against the United States as long as the plaintiff took the simple precaution of filing first in the Court of Federal Claims. See 343 F.2d at 946, 949. The *Tecon* "exception" thus swallowed the rule of Section 1500. As a leading commentator has observed, "Section 1500 does not belong on the books if, as the result in *Tecon* would indicate, it may readily be evaded by the informed, and remains a trap only for those unfamiliar." Schwartz, *supra*, 55 Geo. L.J. at 597.

*Tecon* also conflicted with this Court's decision in *Corona Coal Co.* v. *United States*. In that case, the Court of Claims action was filed well before the district court action. See 263 U.S. at 539. The Court nevertheless held that the case "f[e]ll within the terms of the statute," and declined to create any exception that would remove the apparent hardship created by the statute of limitations. *Id.* at 540.[19]

[19] As the court of appeals noted, "[t]he facts underlying *Tecon* probably explain the court's desire to retain jurisdiction." Pet. App. A13. Tecon sued the United States in the Court of Claims seeking to recover taxes that it alleged had been erroneously collected. See *Tecon*, 343 F.2d at 944



**F. The Courts Are Not Free To Disregard Clear Statutory Language To Avoid Harsh Results, And Section 1500 Is Not As Harsh As Petitioner And Its Amici Suggest**

Petitioner contends (Pet. Br. 24-28) that the court of appeals' construction of 28 U.S.C. 1500 must be rejected because it is "out of harmony with the relevant legal landscape" and produces harsh results. Pet. Br. 25. The short answer to those contentions is that the courts "are not at liberty to add an exception [to clear statutory language] in order to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. at 540.

In any event, a statute barring simultaneous litigation of a single dispute with the government in multiple forums reflects a reasonable policy of discouraging wasteful and duplicative litigation in order to conserve public resources. That policy is far from outmoded. As the court of appeals observed:

> [A] prohibition against suing the government simultaneously in multiple forums, and the likely inability to sue the government twice successively, are even more salutary in this day of excessive litigation than they were back in the Civil War era whence section 1500 comes.

n.1. "After much discovery, several pretrial conferences, and several trial postponements, [Tecon] filed the same claims in a district court and then moved the Court of Claims to dismiss * * * under section 1500." Pet. App. A13. The government—and the Court of Claims—viewed plaintiff's effort to divest the Court of Claims of jurisdiction by filing a second suit as unacceptable conduct. Although the government supported the result in *Tecon* at the time, further experience with Section 1500 has led us to conclude that the conduct in *Tecon* should be addressed by imposing sanctions for abuse of process and vexatious litigation. See, *e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. 1927.

Pet. App. A14-A15. Because it is easy to file a complaint in a civil lawsuit, and expensive to defend such suits, the court of appeals correctly observed that there is "no harm in requiring a party to carefully assess his claims before filing and choose the forum best suited to the merits of the claims and the applicable statute of limitations." *Id.* at A14.

Moreover, petitioner and its *amici* dramatically overstate the harshness of the statute. As an initial matter, many plaintiffs can obtain complete relief by bringing a single action against the United States.[20] If a plaintiff litigates what it perceives to be its best legal theory to a judgment on the merits and loses, it may well decide not to pursue its second-best legal theory in another court. If a plaintiff neverthelss wishes to pursue a second action, Congress has provided a relatively generous limitations period of six years for claims under the Tucker Act. See 28 U.S.C. 2501. In all but the most complex and protracted cases, it should be possible for a diligent plaintiff to complete litigation in another court and, if necessary, file an action in the Court of Federal Claims within the limitations period. We believe that these rules

[20] As noted above, Congress has eliminated certain specific hardships created by Section 1500. The hardship in *Brown* was eliminated by 28 U.S.C. 1631, which allows a federal court that lacks jurisdiction over a plaintiff's claims to transfer the claim to a court with jurisdiction. The case then proceeds as if it had been filed in the proper court. The hardship in *Casman* was eliminated by an amendment to 28 U.S.C. 1491(a)(2) that permits a federal employee to seek both back pay and reinstatement in the Court of Federal Claims. In addition, Congress has provided that a plaintiff may bring certain contract and "takings" claims together with tort claims in the district court. See 28 U.S.C. 1346 (a)(2) (Little Tucker Act).



seldom will cause unwarranted hardship for plaintiffs. If such cases arise, however, equitable tolling of the statute of limitations may be available in some circumstances. See pp. 43-44, *infra*.

## II. THE DOCTRINES OF NON-RETROACTIVITY AND EQUITABLE TOLLING DO NOT APPLY IN THIS CASE

### A. Non-Retroactivity Is Inappropriate In This Case

Petitioner contends (Pet. Br. 43-45) that even if the court of appeals' decision is correct, it should be made "pure[ly] prospective." Pure prospectivity is inappropriate in this case, for several reasons.

1. Section 1500 limits the subject matter jurisdiction of the Court of Federal Claims. This Court has held on more than one occasion that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196, 203 (1988), quoting *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379-380 (1981). See also *Torres* v. *Oakland Scavenger Co.*, 487 U.S. at 317 n.3 (a court has no authority to waive a jurisdictional defect).[21]

Petitioner asserts (Pet. Br. 44) that this principle is inapplicable because the Court of Federal Claims

[21] In *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 87-89 (1982), the Court held that its decision would apply only prospectively. In *Marathon*, the question was not whether the federal courts had exceeded a congressional grant of jurisdiction, but whether a congressional grant of jurisdiction was unconstitutional. The Court's opinion did not consider the argument that a jurisdictional holding cannot be made merely prospective.

has jurisdiction to decide "this type of case" (*i.e.*, Tucker Act claims), while cases such as *Budinich* and *Firestone* were "wholly outside any grant of power to the court" and therefore the court "was effectively acting *ultra vires*.." But there is no meaningful distinction between this case, on the one hand, and *Budinich* and *Firestone* on the other. *Budinich* and *Firestone* were diversity actions; there was no question that the court had jurisdiction to decide that "type" of case. In *Budinich*, the court lacked jurisdiction because the petitioner failed to file a timely notice of appeal. And in *Firestone*, the court lacked jurisdiction because there was no final order. If the court lacked discretion to overlook the jurisdictional defects in those cases, it plainly lacks discretion to overlook the jurisdictional bar of 28 U.S.C. 1500.[22]

2. In any event, there is no basis for petitioner's suggestion that the decision in this case should not apply *to petitioner*. As an initial matter, a judicial decision that does not apply to the parties before the Court is in considerable tension with the "settled principle that this Court adjudicates only 'cases' and 'controversies.'" *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987), quoting U.S. Const. Art. III, § 2. See *James B. Beam Distilling Co.* v. *Georgia*, 111 S. Ct. 2439, 2448 (1991) (opinion of Souter, J.) (declining to "speculate as to the bounds or propriety of pure

[22] Petitioner's prospectivity argument is not supported by the rule that a final judgment in a contested action may not be collaterally attacked on the ground that the court lacked subject matter jurisdiction absent a "manifest abuse of authority" by the court. Restatement (Second) of Judgments § 12 (1982). That rule reflects principles of finality and repose in litigation that are not at issue here.



prospectivity"); see also *id.* at 2450 (opinion of Blackmun, J.) ("prospectivity, whether 'selective' or 'pure,' breaches [Court's] obligation to discharge [its] constitutional function"); *id.* at 2451 (opinion of Scalia, J.) ("both 'selective prospectivity' and 'pure prospectivity' [are] beyond [Court's] power").

Even if the three-part test of *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106-107 (1971), were applicable in this case, petitioner would not be entitled to any relief. Although the court of appeals' decision overruled several judicial exceptions to Section 1500, none of those exceptions applied to petitioner's situation, let alone supplied a "clear past precedent" for petitioner's multiple simultaneous lawsuits against the United States. Indeed, the trial court dismissed petitioner's claims without breaking any new legal ground. Pet. App. E18-E26.

**B. Equitable Tolling Is Inappropriate In This Case**

Finally, petitioner contends (Pet. Br. 45-47) that the doctrine of equitable tolling should be applied to permit the Court of Federal Claims to exercise jurisdiction over its claims. Petitioner did not raise that issue in the courts below, and it was not considered by those courts. Accordingly, the Court should adhere to its usual practice and decline to address an issue not properly raised or decided in the courts below.

In any event, petitioner is not entitled to equitable tolling of the statute of limitations. In *Irwin* v. *Veterans Admin.*, 111 S. Ct. 453, 457 (1990), the Court held that the rebuttable presumption that equitable tolling is permissible in suits against private defendants also applies to suits against the United States. The Court noted that Congress "may provide otherwise if it wishes to do so." *Ibid.* We do not

contend that Section 1500 precludes equitable tolling of a statute of limitations in all circumstances.[23]

In *Irwin*, the Court emphasized that "[f]ederal courts have typically extended equitable relief only sparingly," in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 111 S. Ct. at 457-458. The Federal Circuit has been particularly reluctant to grant equitable tolling of the six-year limitations period under the Tucker Act. See *Catawaba Indian Tribe of South Carolina* v. *United States*, No. 92-5018 (Fed. Cir. Jan. 6, 1993), slip op. 15 ("[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence, or it must show that its injury was 'inherently unknowable' at the accrual date") (quoting *Japanese War Notes Claimants Ass'n* v. *United States*, 373 F.2d 356, 358-359 (Ct. Cl.), cert. denied, 389 U.S. 971 (1967)).[24]

[23] In practice, it is possible that the interaction between the original version of Section 1500 and statutes of limitations prevented the cotton claimants from pursuing a second adjudication on the merits. Their claims were subject to a two-year limitations period. See *Johns-Manville Corp.* v. *United States*, 855 F.2d at 1561 n.7; *Mitchell* v. *Clark*, 110 U.S. 633 (1884) (two-year limitations period applied to actions against federal officials for seizure of property during the Civil War). By the time a cotton claimant completed an adjudication on the merits in one court, the statute of limitations may have barred a second action.

[24] That judicial reluctance is warranted in part because Congress exercises authority to grant equitable relief by en-



Here, petitioner has not contended that the government tricked it into allowing a filing deadline to pass. On the contrary, petitioner filed multiple actions prior to the filing deadline. Nor can petitioner argue that it is entitled to relief because it "actively pursued [its] judicial remedies" by filing not one but several lawsuits in different courts.[25] Equitable tolling certainly should not be available to a plaintiff—like petitioner—who consciously disregards Section 1500 by engaging in simultaneous litigation in the Court of Federal Claims and another court. Petitioner engaged in a campaign of simultaneous litigation seeking essentially identical relief based on essentially identical facts—the government's alleged responsibility for injuries to workers exposed to asbestos while working in naval shipyards or on government contracts. Indeed, petitioner litigated identical takings claims simultaneously in the district court and the Court of Federal Claims. See pp. 3-5, *supra*.

acting private bills. Under its congressional reference authority, Congress refers proposed legislation to the Court of Federal Claims for findings of fact, "including facts bearing upon the question whether the bar of any statute of limitation should be removed." 28 U.S.C. 2509(c). See also 28 U.S.C. 1492. One of the categories of relief provided by private legislation is waivers of statutes of limitations. See Note, *Private Bills in Congress*, 79 Harv. L. Rev. 1684, 1695-1696 (1966). Because Congress has an established method for granting equitable relief from statutes of limitations, the Court of Federal Claims is properly reluctant to grant such relief on its own.

[25] As explained above, petitioner's simultaneous litigation would not have been permitted under any of the judicial exceptions to Section 1500 that were overruled by the court of appeals. Instead, petitioner is arguing for a dramatic expansion of those exceptions.

Petitioner chose to subject the government to multiple lawsuits despite a known risk that its actions in the Court of Federal Claims could be dismissed under Section 1500 as a result. Having made that choice, petitioner cannot convincingly maintain that equitable principles require relief in this Tucker Act case.

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted.

WILLIAM C. BRYSON
*Acting Solicitor General*

STUART M. GERSON
*Assistant Attorney General*

MAUREEN E. MAHONEY
*Deputy Solicitor General*

ROBERT A. LONG, JR.
*Assistant to the Solicitor General*

BARBARA C. BIDDLE
ROBERT M. LOEB
*Attorneys*

JANUARY 1993

☆ U. S. GOVERNMENT PRINTING OFFICE; 1993 342479 60145